DRISCOLL v. NOLAN et al.
No. 8786.

Court of Civil Appeals of Texas. Austin.
June 7, 1939.

Rehearing Denied June 21, 1939.

A. J. Lewis and Henderson, Kidd &amp; Henderson, all of Cameron, for appellant.

W. A. Morrison and Wallace &amp; Wallace, all of Cameron, for appellees.

BAUGH, Justice.

Appellees sued appellant for damages to their lands in Milam County, and for destruction of crops growing thereon in 1935, resulting from the construction by Driscoll on his own lands of levees on the east side of Little Pond Creek, causing the excess waters flowing down that stream to be diverted from the natural channel thereof, and to overflow and damage appellees' lands adjacent thereto on the west. Trial was to the jury upon special issues in answer to which they found damages to the lands in the sum of $660, and $450 for destruction of crops. Based upon these findings the trial court rendered judgment, apportioning same among the several appellees, for $1,110; hence this appeal.

The propositions presented may be reduced to the following:

1. That the trial court erred in admitting the testimony of three witnesses as to mar-

ket values of the lands before and after the 1935 and 1936 overflows, on the grounds that they were not shown to have been properly qualified to so testify.

2. That an assignment by Elizabeth K. Nolan and John F. Sheehy, executor, to Mrs. J. M. Nolan of any cause of action they may have had against Driscoll, caused by the torts complained of, should not have been admitted in evidence because same was not pleaded.

3. That the jury's finding that said levees constructed by Driscoll caused the damages to appellees' 1935 cotton crop on their lands was contrary to the overwhelming weight and preponderance of the evidence.

4. That the court in its judgment improperly apportioned the damages as between the appellees.

The first testimony complained of was that of Mrs. Nolan. She testified that in her opinion the land involved was worth $60 an acre prior to the 1935 and 1936 overflows; and that immediately after the 1936 overflow it was not worth more than half this amount. Appellant contends that because she had not bought and sold any lands in this vicinity in the past 15 years; because she was not engaged in buying and selling lands; because she did not know of any lands being sold in this vicinity since 1930; and knew the value of lands had declined since the depression but not to what extent; she was not qualified to give an opinion as to its market value. And further that her opinion as to value was based, in part at least, on what other owners in that vicinity "held their lands at," which was not a proper criterion by which to arrive at market value.

Much has been written on the qualifications of witnesses to testify as to market value. No well defined limitations or requisites can of necessity be prescribed. And where, as in the instant case, farm lands are involved, and no fixed market price can be established; and because of the depression and the desperate straits with which the farmer, as a matter of common knowledge, has in the last few years been confronted and the sale of farm lands reduced to a minimum; the mattter of arriving at such values has been rendered more difficult. Necessarily such values must in large measure be established by the testimony of non-expert witnesses; and the value of their opinions is in large measure dependent upon their familiarity with the lands involved, the purposes to which they are adapted, their nature, character, location, and uses. If the witness be in possession of all these facts, whether there be sufficient sales of such property in the community to establish a market or not; and if they are sufficient to show that "he has had opportunities to form an intelligent .opinion on the subject, superior to those of the jury" his opinion becomes admissible. This is the criterion stated in 19 Tex.Jur. §§ 134 and 135, pp. 206–208, and approved by the Supreme Court in Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S.W.2d 781, 783. See also 19 Tex.Jur., § 94, p. 140. His opinion then becomes one of weight, rather than of admissibility. This is clearly true as to establishment of values in which strictly expert testimony, particular knowledge or scientific information are not required. In the latter instance, the particular or scientific knowledge is essential for the witness to form a proper opinion. But in arriving at a fair market value of a farm, where sales are not sufficient to establish such market with certainty, the opinion of farmers owning, tilling, and living upon them, is often more valuable and reliable in arriving at a fair market value than the opinion of a real estate agent who lacks the knowledge they possess.

In the instant case it was shown that Mrs. Nolan had lived with her husband on this land as their home for many years. That her husband had tilled it prior to his death in 1933. That she had lived on it and farmed it through employees, not through tenants, from 1933 to 1937, knew it in every particular and what crops it would produce. That she had farmed it prior to the 1935 and 1936 overflows and knew in detail the effect of those overflows and the nature and extent of the damage caused by them.

While it may be that the prices at which owners of similar lands in this vicinity "held their lands at" was not a proper criterion when strictly applied; it is manifest from the testimony we think that this term was used and understood as being the values placed upon such lands by such owners for sale or purchase in an open market. So considered it would be evidence tending to fix a market price for such lands. Under these circumstances we are not prepared to say that the tsetimony of Mrs. Nolan, predicated upon her particular knowledge of the lands she possessed, was not admissible.

■ Without discussing in detail the qualifications of the other two witnesses whose testimony as to market value is complained of, it is clear that they showed themselves better qualified in this regard than Mrs. Nolan was. Both were farmers who had lived in this community for many years, were fully familiar with the lands involved, their productivity, their condition before and after the 1935 and 1936 overflows. They testified that they were familiar with what such lands had sold for in this community two years before. While these witnesses did not undertake to fix categorically and definitely a specific value, they showed such familiarity with the subject matter and the approximate value thereof as to make their opinion admissible. Their opinion that such value was "about $60 or $65" per acre was not indefinite and uncertain, but was, we think, prompted by a sense of fairness, and a realization, as was manifestly the case, that no exact figure could be set as to such value. Manifestly their knowledge of the matter was such as to give them opportunity to form a more intelligent opinion on the subject than the jury could from mere proof of the physical facts. This, as above stated, is the test of admissibility of opinion of non-expert witnesses.

■ The next contention made by appellant was that it was error to admit in evidence an assignment from Elizabeth Nolan and John F. Sheehy, independent executor of the estate of T. F. Duffy, deceased, to Mrs. J. M. Nolan of whatever interest they had in the cause of action against Driscoll arising out of the construction of said levees. This for the reason that it was not pleaded and was prejudicial.

In his answer and plea of acquiescence and estoppel of appellees' predecessors in title to complain of appellant's construction of said levees, appellant alleged that said lands were jointly owned by J. M. Nolan, Elizabeth K. Nolan, and Mrs. R. T. Duffy, at the time of the construction thereof. The plaintiffs had pleaded that they owned said lands. Mrs. J. M. Nolan testified that she had contracted orally to purchase the interests of Elizabeth K. Nolan and Mrs. Duffy in the fall of 1934. Before a deed was executed, however, one of the joint owners died and Sheehy was made executor of his estate. The deed to Mrs. Nolan was dated March 26, 1935, prior to the date of either of the overflows which inflicted the damages complained of, but was not acknowledged by Sheehy as executor until November 29, 1935; nor by Elizabeth K. Nolan until January 6, 1936, and manifestly not delivered until that time or later. If the grantors therein owned an interest in the land at the time of the injuries complained of they would have been proper parties to this suit. Regardless of this, however, we fail to see how the admission of the assignment complained of could have injured the appellant. Manifestly it had no bearing on the amount of the damages found by the jury; and appellant's liability for the damages caused is not, and cannot be, seriously controverted.

Appellant's next contention must, we think, be sustained. That is, that the jury's answer to special issue No. 6 was contrary to the overwhelming preponderance of the evidence. In answer to special issue No. 5 the jury found that the value of the 1935 crop destroyed, after deducting the cost of cultivating, harvesting, and marketing same, was $450. In issue No. 6 they were asked, in effect, what percentage of loss plaintiffs would have suffered on said crop, had the levees complained of not been built. To this the jury answered, "None."

■ It is not controverted that the channel of the stream at this point was comparatively narrow, winding, and not very deep. The valley extended from the channel to the foothills on each side about equal distances, the valley being some 700 or 800 yards wide. The testimony of both plaintiffs' and defendant's witnesses who had lived there many years showed that, prior to the construction of the levees, except in extremely dry years, the stream overflowed on both sides; covering the valley including the lands both of appellant and appellees. That such overflows damaged growing crops thereon, the extent of the damage dependent upon the depth of the overflow and the length of time the flood waters submerged the crops. Such injuries were shown not only by the testimony but are consonant with common knowledge. It is not controverted, but shown by the undisputed testimony, that the overflow of July 3 and 4, 1935, the one which destroyed appellees' crops, was unprecedented, one of the largest old settlers had ever seen, and that the waters covered the valley from the afternoon of July 3rd until the afternoon of July 4th. That a large section of one of the levees complained of was washed out, appellant's crops

injured, and that the flood waters covered his lands on the east as well as those of Mrs. Nolan on the west. It was designated by several witnesses as a "flood" or a "sea of water." Nor is it controverted that the waters remained at flood stage, covering the valley, for a much longer period of time than usual. From these undisputed facts and circumstances, we think the conclusion is inescapable, that had the levees not been constructed, appellees' crops would in any event have suffered material damage from this overflow. We conclude, therefore, that as to the crop damages, the jury finding above indicated, in effect that but for such levees there would have been no damage to appellees' crops, is manifestly so contrary to common knowledge and the overwhelming preponderance of the evidence that it cannot be sustained.

Appellant also complains of the apportionment by the trial court of the damages found as between the various parties plaintiff. If this were error it need not recur upon another trial and we pretermit a discussion of it here.

For the reasons stated the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.