### OLIVER et al. v. CORZELIUS.

#### No. 4576.

Court of Civil Appeals of Texas.
El Paso.
July 20, 1949.

Rehearing Denied Sept. 21, 1949.

272

Kemp, Smith, Brown, Goggin & White, El Paso, Frank B. Clayton, El Paso, Wilson & Wilson, San Angelo, for appellants.

Jones, Hardie, Grambling & Howell, Fryer & Milstead, R. H. Feuille, El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from the District Court of El Paso County, 65th Judicial District. Curtis Corzelius as plaintiff sued his divorced wife, Anne Oliver, and her present husband Robert H. Oliver, to specifically enforce a certain contract to convey to him certain ranches, cattle, and other property situated in the State of Colorado, which was made by his divorced wife when a single woman. The trial was before the court with a jury. On the verdict the court decreed specific performance in favor of plaintiff Corzelius, against the defendants. The defendants, Mr. and Mrs. Oliver, perfected an appeal to this court.

Hereinafter plaintiff will be designated as appellee and defendants as appellants. This court rendered judgment reversing the judgment of the trial court and rendering judgment in favor of appellants. Oliver v. Corzelius, 215 S.W.2d 231. The opinion of this court in this case fully states the nature and character of the case. The Supreme Court granted a writ of error in the case. Upon the hearing the Supreme Court reversed the judgment of the Court of Civil Appeals rendering the case in favor of appellants and remanded the case to the Court of Civil Appeals for consideration of certain points of error not considered by the Court of Civil Appeals and not considered by the Supreme Court. Corzelius v. Oliver, 220 S.W.2d 632, 635. In the original disposition the Supreme Court reversed the judgment of the Court of Civil Appeals rendering the case, but affirmed the judgment reversing the same and remanding it for a new trial. On appellee's motion for a rehearing the Supreme Court set aside the order remanding the case to the trial court and remanded same to the Court of Civil Appeals for consideration of the sufficiency of the evidence to sustain the finding of the jury on Special Issue No. 6, which

was in substance that but for the repudiation of the option contract by Mrs. Oliver appellee would have tendered performance within the time provided for in the contract. On appellants' second motion for a rehearing it is ordered that the case be remanded to the Court of Civil Appeals for a consideration of all points properly raised which have not been decided by that court or by the Supreme Court, including the effect of the improper admission of hearsay evidence. It hence becomes our duty to pass on all points of error not disposed of by the former judgment of this court or the judgment of the Supreme Court. If we properly construe it the holding of the Supreme Court was that the affirmative finding of the jury on Special Issue No. 6 comprehended a finding that during the existence of the option appellee was ready and willing to tender the sum of money conditioning the repurchase of the property involved and would have done so but for the wrongful repudiation of her contract by Mrs. Oliver. We erroneously held as a matter of law that the evidence was insufficient to raise the issue. The Supreme Court held that disregarding hearsay evidence the finding had some support in the evidence. In substance the matters this court is to consider in disposing of the proper disposition of the appeal is first, the sufficiency of the evidence to sustain the judgment of the trial court; the effect of the improper admission of hearsay evidence and the admission of the testimony of appellee as to the values of ranches, cattle, etc., in Colorado, the ground of objection being that the witness was not shown to be qualified to express an opinion as to the value of this property. We shall first dispose of the point as to the admission of the testimony of appellee as to his opinion of the value of the properties. In the original opinion of the Supreme Court it is said:

"This record does present proof, besides the improperly admitted testimony, that Corzelius would have tendered the necessary funds within the contract period had Mrs. Oliver not repudiated her agreement. He testified that the cattle were of the reasonable value of $123,000 and the ranches together with their improvements were valued at $331,342, values which would certainly have supported a loan of substantial proportions."

It is further stated in substance that Corzelius' brother testified that he was financially able to and would have loaned Curtis Corzelius the difference between the amount needed to repurchase the ranch and what an insurance company would loan against it. An officer of an El Paso bank testified that the bank had agreed to loan Corzelius around $90,000.00 on the cattle involved. This and other testimony comprised as a matter of law some evidence to support the finding of the jury that Corzelius, but for Mrs. Oliver's repudiation of the contract, would have been able seasonably to tender her the money required under the agreement to repurchase the property. While the evidence of Corzelius as to the value of the property was not found by the Supreme Court to be the sole basis in supporting the finding as to Corzelius' ability to consummate the repurchase, it was some evidence to support the finding of the jury.

■ Testimony as to the value of property is deemed relevant on the issue on trial. This must be correct where the party seeking to purchase relies solely on borrowing on the property to obtain its purchase price. The evidence in no way shows any ability to raise the purchase price of this property save by appellee's ability to borrow and give a lien or liens on the property as security, in fact there was testimony that appellee was indebted in about the sum of $200,000.00. There is no evidence that he was possessed of any property.

■ Appellee had owned and operated this property for some time prior to the time he conveyed it to his wife. He had borrowed money on part of same from his wife; by reason of the knowledge he must have acquired in purchasing this property and in running and owning same it would seem reasonable that he was able to express an opinion of some weight as to its value.

In our opinion the assignment does not present reversible error. *32* C.J.S., Evidence, § 545, pages 288, 306; Texas Law of Evidence, McCormack & Ray, par. 638, p. 808 et seq.; Driscoll v. Nolan, Tex.Civ. App., 130 S.W.2d 400; Id., 131 S.W.2d 1025; Gulf & Interstate R. Co. of Texas v. Stephenson, Tex.Civ.App., 212 S.W. 215.

This court held as a matter of law appellee failed to show an ability and readiness to purchase the property during the relevant time. In this the Supreme Court held we were in error. It was authoritatively held by the Supreme Court that there was some evidence sustaining the finding. In part, at least, our ruling was based on the mistaken view that ability to borrow money could be only shown by definite committment by the lender to the proposed borrower.

The statement by the official of the bank that he would have loaned appellee $90,-000.00 on the cattle; the statement of appellee's brother that he would have loaned on a second lien enough to have repurchased the property when added to what an insurance or loan company would loan on a first lien; the evidence as to the value of the property; the statement of two or three other witnesses that they would have loaned him in addition to what the insurance company would loan the sum of $50,000 to $70,000, if relevant, was sufficient to support the finding of ability to raise the money. The holding of the Supreme Court in our opinion authoritatively established the relevancy of the testimony.

◼ The credibility of witnesses and the weight to be given their testimony is ordinarily for the jury. 3 Tex.Jur. p. 1096, par. 768; Vol. 4, West's Texas Digest, Appeal and Error, ☞1001(2).

◼ If a finding of the jury finds reasonable support in the evidence the Court of Civil Appeals should not disturb same. 3 Tex.Jur. p. 1093, par. 767.

If the jury believed, as they had a right to do, that the value of the cattle was $123,000 and the ranches and improvements $331,342.00, they might reasonably infer that appellee could have borrowed on first liens a sum sufficient, when supplemented by what his brother and two or three other friends say they would have loaned him, to repurchase the property. This evidence is deemed of sufficient weight to support the finding of the jury on Special Issue No. 6 in substance that appellee could and would have tendered the amount of money but for Mrs. Oliver's repudiation of the contract. While this is true, we also think a negative answer would likewise have been reasonably sustained by the evidence. It was a closely contested issue under the evidence. The evidence is capable of supporting inferences that there might have been a lack of ability to repurchase the property. As far as this record goes his assets consisted solely of this option contract. He had liabilities of at least two hundred thousand dollars.

There remains the effect of the admission by the court over the objection of appellants, of the hearsay evidence. In order to make our holding clear, although it will somewhat lengthen this opinion, it is deemed appropriate to set out the bill of exceptions at some length relating to this matter:

"With respect to securing the larger part of the sum due from certain insurance companies, he was permitted to testify, over defendant's objection, as follows (S.F. pp. 16–22, 51):

"'Q. Then, what else did you do towards making the loan? A. Well, I got a hold of my brother who lives in Houston, Texas, and he is a majority stockholder of a loan company, there at Houston, he has got a loan company, and I asked him, I thought he knew more about it than I did, if he could make arrangements to make a loan for me, an insurance company loan. He represented the Aetna Insurance Company, and he said since he represented the Aetna * * *

"'Mr. Goggin: Now, if the Court please, we will ask that any hearsay be excluded.

"'Mr. Hardie: Well, he is just showing what arrangements he made, Your Honor.

"'Mr. Goggin: You can go ahead and state what you did but I don't think you are

entitled to introduce any evidence as to what his brother told him.

" 'Mr. Hardie: I don't see why not.

" 'Mr. Goggin: I think it is hearsay as to what his brother told him.

" 'Mr. Hardie: Well, it is just like when he went over to the bank and went to Sam Young and arranged for this loan, that was the agreement that he testified to, that he had an agreement.

" 'Mr. Goggin: We are entitled to have those parties here.

" 'Mr. Hardie: I don't think so. .

" 'The Court: Well, I don't know * * * Let him come down to what he is going to testify to.

" 'Mr. Goggin: Well, anything that his brother told him would be hearsay to these defendants. They are not subject to them, what he tells them there is in no way binding on them. If, he wants to get his brother here to testify, well, that is all right.

" 'Mr. Hardie: If the Court please, he is testifying about what arrangements he made. He made these definite arrangements to get the money before he came up and talked to her, and, he can certainly show that * * *. '

" 'The Court: Well, I am going to overrule the objection. .

" 'Mr. Goggin: Note our exception.

" 'A. And, he told me that he wanted to deal with another company.

" 'Mr. Goggin: If the Court please, our objection goes to all of this.

" 'The Court: Well, I will agree with it all right, but I wish you would make the objections as they occur to you because I don't want to have to carry them in my mind.

" 'Mr. Goggin: Well, I mean all of this conversation * * *

" 'The Court: Well, I can understand that, by the parties there might be something.

" 'Mr. Hardie: Yes, there might be something there, I will try to keep that out, Your Honor.

" 'Q. Well, in any event your brother, you had him take it up with a different company?

" 'Mr. Goggin: Now, if the Court please, we object to that.

" 'The Court: Now, of course he wasn't there with his brother.

" 'Mr. Hardie: No.

" 'Q. But you requested him to take it up with what company? A. With the Lincoln National Life Insurance Company.

" 'Q. Lincoln National or Jefferson Standard? A. Jefferson Standard, both, taken it up with both.

" 'Mr. Goggin: Now, if the Court please, that is still leading.

" 'Mr. Hardie: Well, I just wanted to get it straightened out.

" 'The Court: Well, I think that is all right.

" 'Mr. Hardie: I just wanted to get it straightened out. Lincoln National or Jefferson Standard.

" 'Q. Then after you took it up with the, did you take it up with the Jefferson Standard? A. Yes, through Mr. Wood, yes, representative in Houston.

" 'Q. And, what other arrangements, if any, did you make to be able to pay off this indebtedness, besides going to Mr. Young and the Insurance Company? A. Well, I went to my brother and told him what I would get from the Insurance Company plus what I would get from the bank would be a certain amount of money, and since I didn't know exactly what day I could close this deal or I didn't know whether Ann had paid the State of Colorado any more of the notes and what I thought was due, and, I wanted to be in a position to put up whatever difference that I couldn't raise from the bank and the Insurance Company.

" 'Q. And what * * * Did they make an agreement with you? A. They made an agreement with me to let me have whatever was necessary to redeem the ranch.

" 'Mr. Goggin: We want to object to that as hearsay.

" 'The Court: I overrule the objection.

" 'Mr. Goggin: Note our exception.

" 'Q. And, who were those two gentlemen that you made that arrangement with? A. Mr. Taggart and my brother.

" 'Q. And, did you make any other arrangements? A. Yes, I was afraid something might happen; and, I, also, made arrangements with Dr. Larson, long time associate and friend of mine, and Mr. Saul Brockman, one of my largest creditors, I made arrangements with him. He was trying to protect himself at the time.

" 'Q. About getting the difference that you needed? A. Yes.

" 'Q. Did they agree to do that? A. Absolutely.

" 'Q. Now, after you had made those arrangements did you, were you informed by your brother about the Insurance * * *

" 'Mr. Goggin: Now, that is leading, if the Court please.

" 'Q. State whether or not that at any time after that you had information from your brother about what the Insurance Company would do? A. Yes.

" 'Mr. Goggin: We object to that as being hearsay.

" 'The Court: I overrule the objection.

" 'Mr. Goggin: Note our exception.

" 'A. Yes, he told me around September the first.

" 'Q. What time was that? A. Around September the first; that the Insurance Company had * * * No, in fact it was October the first that the Insurance Company had agreed to advance the money.

" 'Q. Now, * * *

" 'Mr. Goggin: The same objection goes for this, it is all hearsay.

" 'The Court: I overrule the objection.

" 'Q. What year was that? A. In 1944.

" 'Q. He told you that? A. Yes, sir. * * *

" 'Q. Now, who was negotiating with the Insurance Company as a broker or loan agent in connection with this transaction? A. Well, my brother handled it for me, but he dealt with Mr. Wood, the agent in Houston, Texas.'

Likewise, over defendant's objection, F. M. Corzelius, Plaintiff's brother, was permitted to testify as follows: (S. F. pp. 129–131):

" 'Q. And, uh, * * * Yes, sir. And, did you take it up with any Insurance Company? A. I did.

" 'Q. What company? A. Well, there was a mortgage company in Houston that made a business of lending on ranch land. There was a man by the name of Colonel Wood.

" 'Q. Yes, sir. A. And, I took it up with him and gave him the description of the property and of the houses and such things as that, and asked him what he could lend on it, and, he said "he would let me know".

" 'Mr. Goggin: Now, if the Court please, we wish to object to any statement of the witness as to what "he said" as hearsay.

" 'The Court: I overrule the objection.

" 'Mr. Goggin: Note our exception.

" 'Q. All right, who was he a broker for? What company? A. He represented several Insurance Companies.

" 'Q. Yes, sir. A. But the one in this particular deal was the Jefferson Standard.

" 'Q. And what happened, if anything, about the loan up until about October 1st of 1944? A. Well, on October the first he came to me and said that he had arranged * * *

. " 'Mr. Goggin: If the Court please, we wish to make the same exception to this. Anything that he had told to him * * * On the grounds that it is hearsay. .

" 'The Court: I overrule the objection.

" 'Mr. Goggin: Note our exception.

" 'Q. What did he tell you there? A. He said that he had arranged for a loan. Well, first, he said the value of the property was about two seventy-five on the information that I had furnished him, which Curt had given me, and, that they would lend a hundred or a hundred and sixty-five. He said that * * * at that time that was subject to having an inspector inspect the property, and verifying the information which I had given him.

" 'Q. And when did you communicate that to your brother? A. It was either that same day or the following morning.

" 'Q. Either the first of October or the second? A. Or the second.

" 'Q. Now, did your brother talk to you about needing additional money, and how he was going to get the money above the insurance loan? A. Yes, he talked to me about that in September, and I told him that I had better take it to the Insurance people and see how much additional money he would have to have besides the money that he got from the Insurance Company and the money he told me he could borrow on the cattle.

" 'Q. On the cattle? A. Yes.' "

This is deemed elementary, that the testimony of what Colonel Wood said as a representative of the Insurance Company is hearsay. In regard to this testimony we said: "Furthermore, the only evidence that the Jefferson Standard Life Insurance Company had made any committment for a loan was the testimony of F. M. Corzelius to effect that he had taken the matter up with a Col. Wood who represented the Jefferson Standard, and that Col. Wood advised him that he had arranged for a loan; that the company 'would lend a hundred or a hundred sixty-five' ($100,000 or $165,000) subject to having an inspector inspect the property. This testimony was clearly hearsay and can have no probative force or effect." Oliver v. Corzelius, Tex.Civ.App., 215 S.W.2d 231, loc. cit. 241.

The Supreme Court in the course of its opinion relating to this matter said: "His (appellee's) evidence in support of this finding consisted in part of certain hearsay statements to which proper objection was made. This included the testimony of Corzelius and his brother that one Col. Wood stated that a certain insurance company would lend Corzelius 'a hundred or a hundred sixty-five' thousand dollars on the properties, subject to inspection. There is no doubt that this testimony was hearsay and should have been excluded." Corzelius v. Oliver, 220 S.W.2d 632, loc. cit. 634.

■ In our opinion this holding was in no way modified, but rather reaffirmed in the two opinions on the respective motions for rehearing. This holding is binding, is the law of the case, binding on the parties and binding on this court. There remains for determination only the effect of this erroneously admitted hearsay testimony. This testimony the jury was bound to consider. This testimony counsel for appellee was at liberty to and no doubt did argue to the jury. It bore upon one of the vital and material issues in the case. This issue was could appellee have borrowed enough money to repurchase the property. It is not claimed that appellee had any other means of raising the money necessary to repurchase the property under the contract other than borrowing on the property in question. In order to redeem the property it was necessary for him to raise approximately $318,000. It was direct evidence that appellee could borrow from $100,000 to $165,000 on the ranch property. Why could he borrow from $100,000 to $165,-000? Because appellee's brother told him that Col. Wood said the company he represented would lend that amount thereon. Col. Wood's statement was unsupported by his oath. Under the evidence, to enable appellee to raise the money to repurchase the property it was necessary that he obtain a relatively large loan on the ranch properties in addition to the money which witnesses Larson, Brockman and F. M. Corzelius said they would have loaned him.

■ Without this testimony it is reasonably doubtful as to what the jury would have found on Special Issue No. 6. Tending to corroborate the testimony of appellee as to the value of the ranch property it is thought it is a matter of common knowledge that those engaged in the business of loaning money on security do not loan the full market value of the property. This is especially true, it is thought, where the money is to be used for the payment of the purchase price of the property and the borrower has no money to put up a part of the purchase price.

It indirectly produced before the jury the unsworn opinion of Col. Wood, from which might be inferred his opinion of the value of the property, an opinion which he was willing to support by causing his prin-

cipal to advance the sum of $100,000 to $165,000 on the property. In fact the jury had the unsworn opinion of Col. Wood that the property was worth two hundred and seventy-five thousand dollars.

■ In our opinion the admission of this testimony over appellants' objection was a grave and serious infraction of appellants' rights; that it is reasonably probable that it led to a finding adverse to appellants on Special Issue No. 6; in short, the erroneous admission of this testimony was reasonably calculated to cause, and probably did cause the rendition of an improper judgment in this case. It is true we have held that the other evidence was sufficient to support the finding. However, the correctness of our ruling of this question is close and doubtful. The improper admission of this hearsay testimony constituted reversible error. Houston & T. C. R. Co. v. Burke, 55 Tex. 323, 40 Am.Rep. 808; Bain Peanut Co. v. Pinson, Tex.Com.App., 294 S.W. 536; Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822; American Produce Co. v. Gonzales, Tex.Com.App., 1 S.W.2d 602; Peek v. Parker, Tex.Civ.App., 210 S.W.2d 619.

■ In passing upon the effect of the admission of this hearsay testimony, careful consideration has been given to Rule 434, Texas Rules Civil Procedure. In our opinion the provisions of that rule do not prevent the wrongful admission of this testimony from constituting reversible error.

■ Appellants did not waive their objection to this testimony by cross-examining appellee and his brother relative thereto. Cathey v. Missouri K. & T. R. Co., 104 Tex. 39, 133 S.W. 417, 33 L.R.A.,N.S., 103; Western Union Tel. Co. v. Wood, Tex.Civ.App., 264 S.W. 118; Hidalgo County Water Control & Improvement Dist. v. Goodwin, Tex.Com.App., 25 S.W.2d 813; Stinnett v. Paramount-Famous Lasky Corp., Tex.Com.App., 37 S.W.2d 145; Legg v. Blythe, Tex.Civ.App., 80 S.W.2d 382, 383; Great American Indemnity Co. v. Dabney, Tex.Civ.App., 128 S.W.2d 496; Stanley v. Stanley, Tex.Civ.App., 139 S.W.2d 876.

For the error discussed, the judgment of the trial court is reversed and remanded for a new trial.