Jack N. GREENMAN, Appellant,

v.

CITY OF FORT WORTH, Appellee.

No. 15848.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 22, 1957.

Rehearing Denied Jan. 17, 1958.

**554**

McGown, Godfrey, Logan & Decker, Fort Worth, for appellant.

R. E. Rouer, Robert R. Goodrich, G. Gordon Whitman, John Gano, Earl C. Morgan, and S. G. Johndroe, Jr., Fort Worth, for appellee.

BOYD, Justice.

Appellee City of Fort Worth filed condemnation proceedings against appellant Jack N. Greenman to obtain land upon which to construct a sewage disposal plant. Appellant appealed from the award of special commissioners. On a trial before a jury, appellant admitted appellee's right to condemn and assumed the opening and closing of the evidence and argument on the issues as to the value of the land taken and the damage to the remainder of appellant's tract. There was a verdict and judgment for appellant for $39,339 for the 131.13 acres taken, and for $41,000 for damages to the remainder.

Appellant contends that the court erred in refusing to allow him to propound the following question to each prospective juror: " 'If the evidence is that the land taken has a fair market value of approximately $87,000.00, and that the damage to the property not taken is $230,000.00, will you have any objection to render a verdict for those amounts merely because of the large amounts of money involved?' ".

In order intelligently to exercise his peremptory challenges, a party has considerable latitude in his examination of jurors. 26 Tex.Jur., p. 644, sec. 81. Of course, the examination need not be confined to matters which might be ground for challenge for cause. Missouri, K. & T. Ry. Co. of Texas v. Rogers, Tex.Civ.App., 141 S.W. 1011. But the scope of the examination allowed is in the discretion of the court, which discretion is reviewable. Lassiter v. Bouche, Tex.Civ.App., 41 S.W.2d 88, writ refused. We are unable to say that the court's refusal to permit the question was an abuse of discretion calling for a reversal. Rule 434, Texas Rules of Civil Procedure.

Nor do we perceive error in the comments by the court during the direct examination of appellant's witness Nowlin. It appears that the witness was reprimanded by the court for laughing, and for talk-

ing while an objection to his testimony was being made. Appellant contends that the remarks of the court reflected upon the credibility of the witness, and that its harmful effect could not have been cured by an instruction to the jury. A severe reprimand of a witness by the court, in an effort to maintain dignity and decorum, is not in every case a comment on the witness' credibility, and we do not think it was so in this instance.

Other points are that the court refused to strike the testimony of appellee's witness Richey to the effect that it is necessary to obtain a permit from the State Board of Water Engineers in order to irrigate land, "regardless of where you are irrigating or who you are," and overruled appellant's objection to the question propounded to appellant's witness Morris: "Are you aware of the fact that all of the water in the navigable stream within the bed and banks of the streams of the State of Texas is owned by the State of Texas, are you aware of that fact?" The witness said that he did not know the law and that he was not aware of the fact.

Before the taking, appellant's land extended to Trinity River and bordered that stream for a considerable distance. After the taking, his remaining land did not reach the river. About half of his original tract, including 89 acres not taken and 68 acres taken, is low land, and could have been irrigated with water from Trinity River. Appellant had irrigated 40 acres of the 68-acre tract, and testified that it produced $200 worth of alfalfa per acre per year, from which he made a net profit of $150 per acre per year. There was other evidence that a considerable element of the value of the low land was its adaptability for irrigation. One witness testified that the 89-acre tract was worth $300 per acre without the right to irrigate, and was worth $600 per acre with the right to irrigate.

Appellant's contention as to the testimony of Richey is that it was a conclusion of law, and an incorrect conclusion of law; that the witness was allowed to testify in effect that appellant had no right to take water from the river for irrigation purposes, but that at most he had only a privilege which might be extended or withheld at the discretion of others. And he contends that the question asked Morris as to whether he was aware of the fact that the water in Trinity River belonged to the State, although not answered, was prejudicial in that allowing the question to be asked over appellant's objection negatived the proposition that appellant had the right to use water from the river to irrigate his land.

In addition to saying that appellant "injected" the issue of riparian rights, appellee says that it appears that appellant based his case on the theory that the highest and best use of his land was for residential development, and that therefore no prejudicial error is reflected because the use for residential development is inconsistent with the less valuable use for irrigated farming.

■ Appellant had the right to "inject" the element of value flowing from his irrigation rights. He acquired the right to use water from the river for irrigation purposes when he bought the land. It is a vested right. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458; Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist. No. 1, 123 Tex. 432, 73 S.W.2d 55. Riparian rights are superior to any rights of appropriation conferred by statute. 44 Tex.Jur., p. 44, sec. 30. They constitute property, and cannot be taken from the owner by condemnation without payment of just compensation. 44 Tex. Jur., p. 47, sec. 34. Such rights are not unlimited, but they are substantial. Appellant was entitled to take water from the river as a matter of right and not as a matter of favor. The value of this property right was as material as any other element of value. And we fail to find any evidence in the record tending to show that the

highest value of all of appellant's land was for residential purposes.

█ There is no contention that after the taking appellant has any riparian rights. His land does not now reach the river. Richter v. Granite Mfg. Co., 107 Tex. 58, 174 S.W. 284, L.R.A.1916A, p. 504, citing Farnham on Waters, sec. 463, and Gould on Waters, sec. 148; Woody v. Durham, Tex. Civ.App., 267 S.W.2d 219, writ refused. And even if all his remaining land is most valuable for residential purposes, that fact would not lessen the damage of admitting testimony the effect of which was that appellant had only the right to ask permission to irrigate that portion of his original tract which all the evidence on the point showed was most valuable for irrigated farming.

Before the adoption of Rule 62a, which has been incorporated in part in Rule 434, T.R.C.P., it was generally held that the admission of incompetent evidence on a material issue was ground for a reversal. Wells Fargo & Co. v. Benjamin, Tex.Civ. App., 165 S.W. 120. It appears that by the promulgation of the two rules mentioned the Supreme Court has changed our judicial policy in respect of such matters. The presumption in favor of injury, if not shifted, is abolished; now no case will be reversed unless it appears that the error complained of was such a denial of the rights of a party as was reasonably calculated to and probably did cause the rendition of an improper judgment. In the application of the rules, every case to a large extent stands upon its own facts, and the holdings in other cases are usually not completely authoritative. The question to be decided is whether the admission of the challenged testimony, which we think was incompetent, calls for a reversal under Rule 434.

█ It is no answer to say, as appellee says, that since the valuation placed by the jury upon the land taken and the damage to the remainder ranged somewhere between the highest and lowest estimates fixed by the witnesses, the testimony complained of was shown to be harmless. Appellant was harmed if that testimony reduced the verdict in any amount.

█ Rule 434 does not require the aggrieved party to show that but for the error a different judgment would have resulted. Benson v. Weaver, Tex.Civ.App., 250 S.W.2d 770, affirmed Weaver v. Benson, 152 Tex. 50, 254 S.W.2d 95; McCarty v. Gappelberg, Tex.Civ.App., 273 S.W.2d 943. Since this testimony bore directly on a vital issue in the case, which amounted to an incorrect conclusion of law and which the jury probably considered as a statement of fact, we are constrained to believe that the overruling of appellant's motion to strike was calculated to and probably did cause the jury to fix the value of the land taken and the damage to the remainder at a less figure than they would otherwise have done. Oliver v. Corzelius, Tex.Civ.App., 223 S.W.2d 271; Peek v. Parker, Tex. Civ.App., 210 S.W.2d 619; Missouri-Kansas-Texas Railroad Company v. McFerrin, Tex., 291 S.W.2d 931.

Standing alone, we think no reversible error would be reflected by the question, propounded over appellant's objection, as to whether Morris was aware of the fact that all the water of the navigable streams belongs to the State. The court's permitting the question to be asked, and requiring an answer from the witness, might intensify the error of admitting the testimony of Richey and further impress the jury with the erroneous idea that appellant did not have the right to irrigate from Trinity River.

█ Another point is that it was error to refuse to permit the witness Laughlin to explain on rebuttal why he sold a tract adjacent to appellant's land for only $550 per acre. During the direct examination of appellee's expert witness Grove, he was permitted to testify, over appellant's objection, that in arriving at his estimate of the value of appellant's land he considered the price Laughlin received for his tract.

Grove put a less valuation on the land taken than any other witness, and all of appellee's witnesses fixed a less value than any of appellant's witnesses. Laughlin would have testified that he sold his land for $550 per acre because he had learned that the sewage disposal plant was to be constructed in the immediate neighborhood, that he would not have sold at that price except for that knowledge, and that in his opinion he lost from $200 to $250 per acre "because of that plant." He would have further testified that he told the purchasers of his land of the proposed location of the plant.

In our opinion, the proffered testimony was material and admissible. 17 Tex.Jur., pp. 338–339, secs. 106–107; Haney v. Clark, 65 Tex. 93; Hamburg v. Wood, 66 Tex. 168, 18 S.W. 623. The testimony of Grove was admitted on the theory that Laughlin's tract was comparable to appellant's, and that the market value of appellant's land could be shown to some extent by showing the actual price received by Laughlin. The latter's proffered testimony that he sold at that price only because of the location of the plant, and that he sold at a figure materially less than its value had it not been for the location of the plant, would be in rebuttal of Grove's testimony. Rule 265, T.R.C.P.; 17 Tex.Jur., p. 372, sec. 127. We think the rejection of this testimony, which was material to a controlling issue, was a denial of appellant's rights and was calculated to and probably did cause the rendition of an improper judgment.

In applying Rule 434, it would seem that the admission of incompetent testimony on a material issue, and the exclusion of competent testimony on such an issue, would be more likely to change the result of a trial than the failure to observe technical procedural rules which do not encompass or directly bear upon the controlling issues in a case. While the Rules are to be given liberal construction to the end that their objectives may be attained, we must not lose sight of the fact that the principal objective to be attained is the "just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." Rule 1, T.R.C.P. "* * * the justice and right of the case * * * is what the law of a case ought to be." Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203, 208.

The judgment is reversed and the cause remanded.