**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY OF TEXAS, Appellant,**

**v.**

**Nolan Lee BUSH, Appellee.**

**No. 10533.**

Court of Civil Appeals of Texas.

Austin.

Feb. 5, 1958.

Rehearing Denied Feb. 26, 1958.

ment by appellant as a brakeman on a freight train and that while in the performance of his duties he was riding in the cupola of a caboose when he was struck in his left eye and on the left side of his face by an object thrown or otherwise propelled through a window of the cupola causing him to loose the sight of his left eye and to suffer further damages. He alleged that appellant was negligent in various respects and that such negligence was a proximate cause of his injuries.

In answer to special issues submitted with appropriate definitions and instructions a jury found: that appellant required appellee to perform his duties as a brakeman in a caboose that was without reasonable protection from objects thrown or propelled toward the caboose; that such requirement was negligence, and that such negligence was a proximate cause of appellee's injuries. The jury assessed appellee's damages at $80,000, and a judgment for appellee for that amount was rendered.

There was evidence that at or near the place where the accident occurred three persons were seen standing on or near the right of way as the train passed and that the window by which appellee was sitting was open. The jury found:

"that one of the three persons standing near the train as the caboose approached and passed threw a rock or other hard missile which passed through the open window of the cupola of the caboose and struck the plaintiff."

This was the second trial of this cause and at the former trial Hugh C. Cole testified as a witness for appellee. He was not present at this trial and over appellant's objection the testimony he gave at the former trial was read to the jury. This action is made the basis of appellant's first point.

It is shown by the record (including a bill of exceptions) that the cause had been set for trial for February 11, 1957, and that on the preceding Friday or Saturday appellee's attorney learned that Cole, on Feb-

Wayne R. Howell, Denison, G. H. Penland, Dallas, J. S. Freels, Denison, C. B. Maynard, Bastrop, Dan Moody, Jr. and Dan Moody, Austin, for appellant.

Joe P. Hart, LaGrange, Bracewell, Reynolds & Patterson, Houston, for appellee.

GRAY, Justice.

Appellee sued appellant for damages under the Federal Employers' Liability Act, Title 45 U.S.C.A. Sec. 51 et seq., for personal injuries. He alleged that appellant owned a network of railroad lines over which it operated trains in interstate commerce; that on the night of July 26, 1953, he was acting in the course of his employ-

ruary 5, had gone to a hospital in Denison, Texas. Before the announcement of ready for trial by appellee on February 11, his attorneys were advised by appellant's attorneys that appellant would object to the transcript of Cole's testimony being read to the jury. A conference between the attorneys and the trial court was had and appellant stated he would object to the reading of the transcript of Cole's testimony given at the former trial because it would be hearsay and because appellant wanted to further cross examine him. Appellee did not seek either a postponement of the trial or a continuance and made no effort to take Cole's deposition but announced ready for trial. The trial began February 11 and was concluded February 15.

On February 12 one of appellee's attorneys testified that at the former trial Cole testified as a witness; that he was cross examined by appellant; that Cole was then ill and in a hospital at Denison; that before his illness Cole had planned to be present for the trial and further testified

"Q. And, when did you find out that he was going to the hospital?

"A. I didn't find out that he was actually in the hospital until either last Friday or last Saturday, and I learned from the neighbors that he was in the hospital in Denison.

"Q. And, then, you did investigate that and verify that fact?

"A. Yes, sir.

"Mr. Reynolds: No further questions."

Upon the transcript of Cole's testimony being offered appellant made a further objection as follows:

"Well, I object to the offering of the testimony in the form of the transcribed notes of what the witness testified to, not because of any question about the verity of the testimony as it has been transcribed; I'm sure that it's absolutely accurate and I've read it, but I felt that I was giving them fair warning that I was going to oppose the introduction of the transcript of his testimony; that I wanted an opportunity to cross-examine him further, and that I was giving them that notice in advance, so that they wouldn't be surprised at this particular moment right now. And, then, he refers to the authorities he presented; I have no question about the authorities, but I do remember the authorities say that if the witness could not be obtained, and there has been nothing offered here, no testimony offered or no statement made at the time about his condition or how long he'd been sick—he might have said how long he had been sick, but how long he was going to be sick; there was no showing that he could not be later produced to testify here from the witness stand if he wanted to. So, I insist on the objection that I made before the announcements of ready were made in this case, and ask the Court to refuse to have the testimony read."

After the objection the following discussion was had between the trial court and appellee's attorney:

"The Court: Well, I'm not talking about the authorities; the predicate is all I'm worried about.

"Mr. Reynolds: Well, we feel that we've satisfied the authorities.

"The Court: All right, read the testimony."

Appellant's exception was saved and the transcript of Cole's testimony was read to the jury. His testimony was that he had been employed by appellant for forty-five years; that most of the time he worked on freight trains, first as a brakeman and later as conductor, and that he was familiar with the type of caboose used by appellant. He testified to three specific instances of rocks or objects being thrown at or into the caboose; that in the "Big Cut" near

San Antonio slabs of concrete fell off of overpasses onto trains and that other objects were thrown at them; that in one instance gravel spilled from a car in the train and was thrown up against the caboose "and showered us pretty good in the caboose"; that once a piece of oak fell from a car and came up and landed on the top of the caboose. He said that glasses "are broken by just such as I'm talking about. A bolt falls off and knocks a rock up in the air and it comes up and breaks a glass in the caboose. It's happened to me a good many times. In fact, we don't worry about that unless somebody gets hurt." He further said that in "my forty-two years on the road, I've had numbers of objects thrown at the caboose," and in another instance he said "We're being thrown at continually." He said he was familiar with cabooses used by another railroad, that he had ridden in those cabooses and said they were equipped with safety devices. He described the construction of the cabooses and the safety devices used. He also said that he knew of two of appellant's cabooses that had been equipped with safety devices by employees.

The rule with reference to the introduction of evidence given at a prior trial by an absent witness is quoted by our Supreme Court in Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, 697 as follows:

"* * * testimony of a witness given at a former trial of the same case on substantially the same issues, and where there was opportunity for cross examination, may be reproduced where it is shown that the witness is dead, or that he had become insane, or is physically unable to testify, or is beyond the jurisdiction of the court, or that his whereabouts is unknown and that diligent search has been made to ascertain where he is, or that he has been kept away from the trial by the adverse party."

See also Carter v. Irvine, Tex.Civ.App., 77 S.W.2d 247.

The most that the record shows is that Cole testified and was cross examined at the former trial and at this trial he was ill and in a hospital at Denison. There was no showing that the illness was disabling, whether it was expected to be of temporary duration or was of a continuing nature. It is not shown whether Cole voluntarily entered the hospital or whether he was directed by his doctor to enter, nor is it shown for what purpose he went there or how long he was expected to remain.

Under the rule supra the question here is: Was there a showing that Cole "was physically unable to testify?" The burden was on appellee to make this showing. There is no showing that Cole was physically unable to testify but only that he was ill and in a hospital in another county, but in Texas. It then became necessary that appellee show diligence in trying to procure his testimony by deposition or otherwise and that the testimony could not be procured.

After appellee learned that Cole was in the hospital he had time to procure evidence showing his physical condition for which reason a presumption as to such condition cannot be indulged.

"Presumptions are based upon some necessity, and in the absence of such necessity they will not be indulged, and the court will not go into the domain of presumptions where direct proof can be obtained." Christopher v. City of El Paso, Tex.Civ.App., 98 S.W.2d 394, 400, Er. dism.; 31 C.J.S. Evidence § 114; Miller & Miller Motor Freight Lines v. Hunt, Tex.Civ.App., 242 S.W.2d 919. Saenz v. Hinojosa, Tex. Civ.App., 268 S.W.2d 476.

Further the inference cannot be drawn that because Cole was in the hospital he was physically unable to testify because it would be uncertain from mere proof that he was ill and in the hospital that he was also physically unable to testify. Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791, 794.

From Friday or Saturday preceding the trial to the time appellee offered Cole's testimony he made no effort to take his deposi-

tion or otherwise procure his testimony and none to show that he was "physically unable to testify." Prior to his announcement of ready appellee was advised that objections would be made to the introduction of Cole's former testimony and the matter was discussed between the attorneys and the trial court. Even if the trial court then indicated that the objections would be overruled and the introduction of the testimony permitted (which the record does not show), appellee was not relieved of making the proper showing because he was the one inviting error. Casseb v. Sweeney, Tex. Civ.App., 252 S.W.2d 209, Er. ref., n. r. e.

In Morris v. Davis, Tex.Civ.App., 292 S.W. 574, 575, er. ref., the court considered the rule in this State as to permitting the introduction of the testimony of absent witnesses who had testified at a former trial of the case. The court quoted from Boyd v. St. Louis Southwestern Ry. Co., 101 Tex. 417, 108 S.W. 813; Baker v. Sands, Tex.Civ.App., 140 S.W. 520, 521, and Trinity & B. V. Ry. Co. v. Geary, Tex.Civ.App., 194 S.W. 458, 460, er. ref., and said:

> "It is clear beyond dispute that the purpose of the rule requiring the 'whereabouts' of the witness to be unknown, before his former testimony is admissible, was to require the taking of his deposition when his 'whereabouts' is known, even though his residence be beyond the limits of the state. Or, as said by Judge Key, 'conditions which render it reasonably certain that he cannot procure the evidence of the absent witness by deposition or otherwise' should be shown by the party offering it."

From the preceding Friday or Saturday, when appellee's attorney learned Cole was in the hospital (he did not say when he learned that Cole was ill) to Tuesday, when Cole's testimony was offered, the only diligence shown was that the attorney verified the fact that Cole was in the hospital.

From what has been said it is clear that with full notice of appellant's objection

appellee proceeded to trial without determining that conditions existed which rendered it reasonably certain that he could not procure Cole's evidence by deposition or otherwise. Morris v. Davis, supra. Baker v. Sands, supra. Concurring opinion. 140 S.W. 522–523.

Appellee says that the admission of Cole's testimony was a matter within the discretion of the trial court, and that any error in admitting it was harmless because substantially the same evidence was received from other witnesses.

Texas courts have often used the general statement to the effect that the matter was within the sound discretion of the trial court and absent a showing of an abuse of discretion the question will not be reviewed. However a definition of the term has not often been attempted by our Texas courts. In 27 C.J.S. Discretion p. 135 it is said that "judicial discretion" is a relative, elastic term and that "any attempt to define it is generally regarded as a difficult and dangerous undertaking." And at p. 138 "legal discretion" is defined as: "A discretion to be exercised in discerning the course prescribed by law, or within the limits which the law fixes." In Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965, 967, it is said that in law the word "discretion" is defined as:

> " 'The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.' 1 Bouv.Law Dict., Rawles' Third Revision, p. 884."

The above definition is quoted with approval in State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S.W.2d 25. In Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126, the court said:

> "Naturally appellate courts will differ on the delicate question of whether trial courts have abused their discre-

tion. While trial courts have some measure of discretion in the matter, as, in truth, they have in all cases governed by equitable principles, it is not an unbridled discretion to decide cases as they might deem proper, without reference to any guiding rule or principle."

In Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S.W. 606, the court considered an act of the Legislature giving to trial courts authority to hear evidence on motions for new trial grounded on misconduct of jurors and providing, on conditions, that "a new trial may in the discretion of the court, be granted." The court said:

"* * * we conclude that the 'discretion' expressed in the act above copied is upon the same level with the discretion vested in the trial judge in many instances, and that we may review its exercise wherein it clearly appear that the rights of parties have been disregarded."

The question of the trial court's discretion involved here is bridled by the rule of law established by the authorities supra that before the testimony of a witness given at a former trial may be introduced as original evidence the party offering the testimony must discharge the burden of showing diligent but fruitless effort to procure the attendance of the witness or his deposition. To fail to apply this established rule of law would certainly disregard the rights of the opposing party.

It may be said that the admitted testimony of Cole tended to establish the negligence of appellant in the respect inquired about by the special issues and tended to establish the same general result as that of other witnesses for appellee. Yet his testimony in part at least, related to incidents and matters not testified to by other witnesses. His testimony was adverse to appellant and, if believed by the jury, it was material and had probative value in support of the answers made to the issues. It was improperly admitted and we have

demonstrated that it was harmful to appellant for which reason Rule 434, Texas Rules of Civil Procedure does not prevent its admission from constituting reversible error. Oliver v. Corzelius, Tex.Civ.App., 223 S.W.2d 271.

■ We have examined appellant's other points and in view of another trial we will briefly notice them. The point complaining that the verdict of the jury is excessive need not be discussed because of our disposition of the appeal. The same is true of the points complaining of the failure of the trial court to instruct a verdict. It was not error for the trial court to refuse appellant's requested issue which in effect inquired if the injury sustained by appellee and the manner in which it was inflicted could, in the exercise of ordinary care, have been reasonably foreseen by appellant and its employees in charge of the train and the injury avoided. There was evidence relative to this issue and perhaps sufficient to raise it, however the submitted definition of proximate cause included:

"it should have been reasonably anticipated and foreseen by a person of ordinary prudence in the exercise of ordinary care that the event or some similar event would occur as a natural and probable consequence."

The issue inquiring if appellant's negligence (found by the jury) was a proximate cause of the injury necessarily included the matters inquired about in the requested issue and for which reason its refusal was not error. Point 3.

Upon another trial the evidence should be limited to what appellant did or did not do with respect to the cupolas rather than permitting witnesses to express their opinions and conclusions that appellant did not attempt to correct the problem with respect to objects being thrown into the cupolas. (Appellant's point 17.)

All other points relate to the admission, over appellant's objections, of testimony as to the happening of other incidents, con-

versations at safety meetings and at other places with appellant's executives. We think the complained of evidence was admissible.

For the reasons above stated appellant's first point should be sustained and the judgment of the trial court reversed and the cause remanded.

■ The foregoing has been tendered as the court's opinion however the majority are of the opinion that the judgment should be affirmed for the reasons stated in the filed opinion of Chief Justice Archer and in the filed opinion of Justice Hughes.

It is my opinion that the reading of the transcript of the testimony of the witness Cole requires a reversal and remand for the reasons above stated. However since we disagree on this question appellant's other points must be further noticed.

■ Appellant's points 6 to 23 both inclusive, except point 17 later noticed, complain of the admission of the testimony of various witnesses relating to other incidents happening while freight trains were being operated, of statements made at safety meetings and statements made to appellant's superintendents, yardmasters and assistant superintendents. This evidence was relevant to the issue of appellant's negligence and especially to the issue of proximate cause. The points do not present error. This evidence presented issues of fact for the jury to determine and the trial court did not err in refusing appellant's request and motion for directed verdict. Points 2 and 4.

■ Point 17 complains that the witness Foster was permitted to testify that appellant did not attempt to correct the problem with respect to objects being thrown into the cupola. In view of the entire record this point does not present reversible error even though standing alone it may have been subject to the objection that it was the opinion and conclusion of the witness. There was evidence: as to the condition

of the caboose at the various times of the incidents testified to by the witnesses; of discussions had at safety meetings relative to safety devices, and that appellant's Mr. McDonald replied to a request for a window shield to be placed on the cupola "that the railroad had no money appropriated for those purposes."

Point 5 complains that the verdict is excessive. The verdict was an award of damages for: loss of capacity to work and earn money, past and future; physical pain suffered in the past and to be suffered in the future, and mental anguish suffered and to be suffered in the future.

■ The evidence shows that at the time of the trial (February, 1957) appellee was 32 years of age with a life expectancy of 33.92 years (then in July 1953 he was approximately 28 years of age); he was robust and healthy and was earning $450 per month. After the accident he was unable to work for a time and afterwards worked at various jobs and for approximately three years earned an average of $113 per month.

Just compensation to appellee was a question resting within the discretion of the jury under the instructions of the court. We find nothing in the record to suggest that the instructions were violated, that improper evidence was considered, or that prejudice, passion or any other improper influence prompted the jury to fix an excessive award.

There can be no question that appellee's injury was not permanent and serious.

In 13 Tex.Jur. p. 271, Sec. 151, the rule is stated as follows:

"*In General—Discretion in Determining Amount.*—It is a well settled general rule that where the law furnishes no legal measure of damages, and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is the result of passion, prejudice or

corruption or that the evidence has been disregarded, their verdict is conclusive and will not be set aside as excessive, either by the trial court or on appeal.

"The end to be attained in each instance is compensation. Full compensation is impossible in the abstract; and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. The courts will only see that the jury approximate a sane estimate, or that the results attained do not shock the judicial conscience. And while the amount awarded must bear some reasonable proportion to injury sustained, a verdict will not be set aside merely because it is large or because the reviewing court would have awarded less. The jury's function is to assess damages, and the fact that the law furnishes no legal rule for their admeasurement does not warrant, but should rather restrain the court from substituting its judgment as to what would be a reasonable compensation for the injury for that of the jury."

Point 5 is overruled.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

In my opinion the Trial Court did not err in admitting in evidence the testimony of the witness Cole given at a former trial of this case.

I accept as correct the statement of the rule to be observed in admitting testimony given at a prior trial quoted in the majority opinion from Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681.

The only portion of such rule applicable here, in my opinion, is the disjunctive phrase " * * * or is physically unable to testify. * * * " The rule does not require any showing of diligence in this regard and I have found no case requiring it.

Justice Gray holds, however, that diligence is required and the deposition of the ill witness should have been taken if possible.

It must be remembered that the parties have had their day in court with the absent witness and the question of whether his testimony should be reproduced by reading the transcribed notes of the court reporter in the one instance or the transcribed notes of the notary public in the other instance is one of small moment. In either case all that the jury sees is the written page. I prefer to believe that our law is not so impractical as to require the dilatory, uneconomical taking of depositions under these circumstances and thus duplicate the testimony of an absent sick witness.[1]

The following evidence pertaining to the absent witness Cole was before the Trial Judge when he ruled on the admissibility of his prior testimony:

"Q. All right; Mr. Hart, do you know where Mr. Cole is at the present time? A. He's in the hospital at Denison, Texas—railroad hospital.

"Q. Do you know what his problem is? Is he sick? A. Yes; he's ill.

"Q. And, when did he go to the hospital? A. He went to the hospital a week ago today; that would have been on the 5th of February.

"Q. Now, prior to that time had you discussed with Mr. Cole and had

---

[1]. "On principle, it would seem that the fact that the deposition of the witness could have been taken though he is unavailable as a witness at the trial, should have no weight * * * against the admission of the previous testimony, for the deposition if taken would be no better than the former testimony." McCormick and Ray, Texas Law of Evidence, 2d Ed. Sec. 943, p. 721.

he planned to be present at this particular hearing? A. Yes; he had.

"Q. Before his illness? A. Yes.

"Q. And, when did you find out that he was going to the hospital? A. I didn't find out that he was actually in the hospital until either last Friday or last Saturday, and I learned from the neighbors that he was in the hospital in Denison.

"Q. And, then, you did investigate that and verify that fact? A. Yes, sir."

Justice Gray finds two faults with this testimony: (1) It does not show that the witness was physically unable to testify, only that he was sick and in the hospital (2) that it does not show the illness to be a continuing one, not merely temporary.

The question here is whether or not the Trial Judge abused his discretion under the circumstances. Federal Underwriters Exchange v. Rigsby, Tex.Civ.App.Beaumont, 130 S.W.2d 1105, writ dism. cor. judgm.; Bowles v. Bryan, Tex.Civ.App. Dallas, 277 S.W. 760, writ dism., w. o. j.; 17 Tex.Jur. p. 660.[2]

I infer, as did the Trial Judge, that if a person is ill and confined to a hospital he is too sick to be in court, 260 miles away, and hence is "physically unable to testify." This inference is strengthened here by the fact that Mr. Cole was in a "railroad hospital."

As to the second objection made by Justice Gray, neither in the rule quoted from Lone Star nor in any case cited nor in any Texas authority found by me does the requirement appear that it must be shown that the illness of an absent witness be more than temporary.

In McCormick & Ray, footnote 1, p. 729, it is stated:

"As to the duration of the infirmity, it would seem that inability at the time of the trial to attend, or testify, should be the test, and that the former evidence should be admissible, in the court's discretion, whether the infirmity were temporary or permanent."

Whatever the rule should be I find no authority for holding that proof of confining illness of the witness at the time of trial is not a sufficient predicate for the admission of his former testimony.

I wish to repeat that the question is not, in my opinion, one of substance. If depositions may be repeatedly used in succeeding trials why should the use of former testimony be made more restrictive than prior decisions require?

On motion for new trial the claimed error in admitting the Cole prior testimony was again raised. Appellant attached to its motion an affidavit of Dr. W. H. Frietsch from which I quote:

"That he is cognizant of the facts herein stated and is competent to make this affidavit; that he is a regular licensed and practicing physician and surgeon of the State of Texas, residing in Denison, Texas, and of the regular school of medicine; that he knows Hugh Copeland Cole, Sr., a resident of Smithville, Bastrop County, Texas; that on or about the 6th day of February, 1957, the said Hugh Copeland Cole, Sr., reported to him at the outpatient clinic of the Missouri-Kansas-Texas Railroad Employes Hospital at Denison, Texas, for examination, complaining of discomfort and a burning sensation when passing material from

---

2. The test is otherwise stated in McCormick & Ray, Texas Law of Evidence, 2d Ed. p. 738:
   "If reasonable minds could not differ as to existence or non-existence of the facts necessary to the predicate, the judge would determine the question, excluding or admitting the former testimony accordingly."
   See an enlightening discussion of the term "abuse of discretion" by Associate Justice W. St. John Garwood dissenting in Ditto v. Ditto Investment Co., Tex., 309 S.W.2d 219, 224.

his bladder. He stated that this discomfort had been of several months' duration; that he had taken treatment with sulfa drugs for relief, but that relief had not been obtained; that the said Hugh Copeland Cole, Sr., was thereupon by the said Dr. W. H. Frietsch, M. D., affiant here, hospitalized for further examination and treatment under a diagnosis of cystytis; that this diagnosis was confirmed by further examination and the patient discharged from the hospital on the 25th day of February, 1957.

"Affiant, Dr. W. H. Frietsch, M. D. further states that at all times while the said Hugh Copeland Cole, Sr., was in the hospital at Denison, Texas, he was both physically and mentally capable of giving testimony under examination both direct and cross-examination in any litigation in which he might be called as a witness. He further states that there was no reason why if necessary, during the stay of Mr. Cole in the Denison hospital that Mr. Cole could not have left the hospital and reported to testify in person at the trial of Nolan Bush vs. Missouri-Kansas-Texas Railroad Company of Texas when pending in Bastrop County, Texas; that such physical appearance at the trial could have been made by the said Hugh Copeland Cole, Sr., with-out danger to his physical condition and, more particularly could have been made on any one of the following days, February 12, 13, 14, or 15, 1957."

Appellant offered no testimony in support of the affidavit.

The witness Cole did testify:

"Q. What did Dr. Frietsch say was wrong with you, or did he know what was wrong with you? A. He didn't know for a period of ten days until he found the trouble and then is when he called Moorman in and gave me cystoscopic examination and found the trouble.

"Q. What was your trouble? A. Sir?

"Q. What was your trouble? A. An infection in the bladder.

"Q. And then they gave you some treatments? A. That's right.

"Q. Now, were you in any pain when you got there? A. I certainly was; yes, sir.

"Q. How long were you in pain after you got there? A. I was in pain every day.

"Q. Was it severe pain? A. It was.

"Q. And every day until you were released—did you finally get some * * * A. Even when I left there it was still some pain.

"Q. Well, was it as severe when you left as it was when you got there? A. No, sir.

"Q. Did you have any conversation with Dr. Frietsch about whether you should stay in the hospital, or did he order you to stay in the hospital? A. He did. That's the first thing he told me; he said * * *

*     *     *     *     *     *

"Q. What did he tell you? A. He told me to stay there until he found out what was the matter with me— 'I'm going to cure you, but you stay right here; don't leave this building, and I will cure you if possible'.

"Q. All right; you were under his care? A. Yes, sir.

"Q. And he, himself, recommended you stay in the hospital? A. He did.

*     *     *     *     *     *

"Q. Let me ask you this question— did they catheterize you while you were there? A. Yes, sir.

"Q. This doctor did? A. Yes, sir.

"Q. Every day—several times? A. No; twice.

"Q. And through February 6th., for some ten days, it's your testimony you were in extreme pain? A. That's right.

"Q. Did you feel at that time you could have come down here and testified? A. I don't believe I would have left there, even if he hadn't told me to.

"Q. You were that sick? A. Yes, sir.

"Q. Now, you testified in the trial of this other case, did you not? A. Yes, sir.

"Q. And you knew that it had been set down for trial again, did you not? A. That's right.

"Q. Had you been able, you would have appeared, would you not? A. Certainly."

The Trial Court could have, of course, granted a new trial and no doubt would have if he had been convinced that his ruling in admitting the Cole prior testimony was erroneous or that the predicate made for its admission was factually incorrect.

The evidence heard on the new trial hearing confirms, in my judgment, the original ruling of the court in admitting the prior testimony of Mr. Cole.

Except as indicated herein I concur in the opinion of Associate Justice GRAY. I also concur in the opinion of Chief Justice ARCHER insofar as it affirms the judgment below.

ARCHER, Chief Justice (concurring).

I do not believe that the reading of the testimony of the witness Cole, the circumstances surrounding which are fully set out in the other opinions in this cause, was such an error, if any error, to justify the reversal of this case in view of the holding in Aultman v. Dallas Railway Terminal Company, 152 Tex. 509, 260 S.W.2d 596; Walker v. Texas Employee's Insurance Association, Tex., 291 S.W.2d 298.

As to the excessiveness of the judgment I express no opinion, there being no yardstick to determine to what extent a judgment should be reduced by a remittitur.

The opinions of Associate Justice Gray and Associate Justice Hughes discuss the case fully and I see no need to recite facts and other rulings.

I would affirm the judgment.