STATE OF MISSOURI at the relation of UNITED STATES FIRE INSURANCE COMPANY, a Corporation, Relator, v. HON. BEN TERTE, Judge of the Circuit Court of Jackson County, Missouri at Kansas City.— No. 38424.—176 S. W. (2d) 25.

Court en Banc, November 1, 1943.

1090

*John W. Hudson* and *S. L. Trusty* for relator.

*O. J. Adams* and *J. M. Loomis* for respondent.

ELLISON, J.—Original proceeding in mandamus to compel the respondent circuit judge to take jurisdiction of a declaratory judgment suit. The suit was filed by the relator Fire Insurance Company in Jackson County on April 14, 1941, against Eva F. Hunt. It sought a declaration of the rights of the parties under a $1000 fire insurance policy theretofore issued by relator to said defendant, covering a building on two lots in Breckenridge, Missouri, which had recently been totally destroyed by fire. About two weeks after the institution of the declaratory judgment suit the defendant Eva Hunt

1092

brought a separate action against relator to recover on the same policy in the circuit court of Caldwell County where the property was located. Thereafter, in the Jackson County circuit court she demurred, filed answer, and then moved to dismiss relator's declaratory judgment suit, in each instance challenging the court's jurisdiction thereover. The demurrer and motion were overruled, whereupon she filed a motion to stay proceedings in that suit until her action in Caldwell County on the insurance policy had been disposed of. That motion was sustained by the respondent judge.

The relator Insurance Company then brought this mandamus proceeding, contending respondent's sustention of defendant Hunt's motion to stay proceedings in the declaratory judgment suit was tantamount to a refusal to *take jurisdiction* thereof. The respondent judge makes return denying that he had refused to take jurisdiction of the suit and alleging to the contrary that he did accept jurisdiction; but that he sustained said motion to stay proceedings therein in the exercise of his judicial *discretion,* because of the pendency of defendant Hunt's action on the policy in Caldwell county, and because he believed relator's suit for a declaratory judgment in his court was not brought in good faith, but for the purpose of preventing defendant Hunt from having her action on the policy in Caldwell county tried to a jury.

The foregoing is an outline of the ultimate facts, but a few others should be stated for a better understanding of the case. It is conceded that the same parties, property and insurance policy are involved in both cases; and that the ultimate question in both is whether the relator is liable to defendant Hunt on the policy. There was a clause in the policy reciting that it should be void if the interest of the insured in the land were other than unconditional and sole ownership in fee simple, or if any change, except by her death, should take place in her interest, title or possession. The relator's petition in the declaratory judgment suit alleged the foregoing, and [27] that some two weeks or more before the fire defendant Hunt had entered into a written contract for the sale of the property, received a down payment on the purchase price, and placed the vendee in possession. For that reason relator disclaimed liability, averring defendant Hunt had no insurable interest in the property because of the aforesaid policy provision; but that she claimed relator was liable for the full amount, in consequence of which an actual controversy existed between them. Then followed the prayer for a declaratory adjudication of "the rights, liability and responsibility of the parties" under the policy, and for general relief. There was no prayer for cancellation of the policy, or for affirmative, injunctive or other coercive relief.

Defendant Hunt by her answer denied having made the sale contract; affirmed the policy was binding; charged vexatious delay;

asserted no controversy existed between the parties within the meaning of the Declaratory Judgment Act, over which respondent could exercise jurisdiction to grant declaratory relief; claimed the right to a jury trial (evidently meaning in her Caldwell county action); and alleged the pendency of that action where relator could make its defense. The prayer of the answer was that relator be denied declaratory relief, and that she be discharged with her costs. She asked no money judgment or executory process.

Relator's legal theory is as follows. The circuit courts of Jackson county and Caldwell county were of coordinate jurisdiction. Relator's suit for a declaratory judgment was instituted first in the former court and service of process obtained. Therefore when the respondent judge of that court sustained defendant Hunt's motion to stay proceedings pending the outcome of her action on the policy later filed in the Caldwell county circuit court, he was in effect refusing to take jurisdiction of relator's suit for a declaratory judgment— this because the court which first acquires jurisdiction of the parties has the right of way and should retain complete and exclusive jurisdiction until the issues are fully determined. (Relator filed an answer in defendant Hunt's Caldwell county action, setting out the same legal contentions and praying that proceedings therein be stayed pending the determination of the declaratory judgment suit in Jackson county.)

It is evident from respondent's rulings that he was not refusing to *take* jurisdiction of the declaratory judgment suit, or at least did not so intend. Three times defendant Hunt attempted unsuccessfully to challenge his right to try the cause. First, she demurred on the ground that there was another action pending between the same parties for the same cause, and respondent overruled the demurrer. Next her answer reiterated that respondent was without jurisdiction to grant relief under the Declaratory Judgment Act, because of her action pending in Caldwell county where relator's defenses could be asserted. And thirdly, she filed a motion to dismiss the declaratory judgment suit on the ground that under the facts respondent had no jurisdiction of that form of proceeding, and that by the entertainment thereof he would be denying her the right of jury trial in the Caldwell county action. Respondent overruled that motion, but suggested that if she would file a motion to stay proceedings the court would sustain it, which was done.

In view of this case history it seems relator is in error in charging that the respondent judge refused to take jurisdiction of the case. A better way of expressing its contention would be to say that he refused to *exercise* jurisdiction.[1] Further, to narrow the issues it

[1] Borchard, Declaratory Judgments (2 Ed.), p. 313; Aetna Casualty & Surety Co. v. Quarles, 92 Fed. (2d) 321, 323(3).

should be stated that while defendant Hunt in her answer in the declaratory judgment suit alleged no controversy existed between her and the relator Insurance Company, yet the respondent judge makes no such contention here. His return by necessary implication admits the contrary. But the controversy was one of fact, not of law. It was not disputed that *if* defendant Hunt before the fire did sell the property, accept part of the purchase price and deliver possession, the policy was thereby voided under the provision thereof heretofore summarized. On the merits there were only two questions: (1) whether she did make that sale; (2) and whether the relator was guilty of vexatious delay in refusing to pay the loss. The sole remaining question was not one of substantive rights but of procedural law— whether defendant Hunt should be required to try the foregoing issues of fact in [28] the declaratory judgment suit. The only question before us is whether the respondent had a judicial discretion, uncontrollable by mandamus, to stay proceedings in the declaratory judgment suit because he thought it had been filed by relator in bad faith to prevent defendant Hunt from having a jury trial in her separate action on the policy in Caldwell county.

The sections of our Declaratory Judgment Act applicable to this question are substantially identical with the corresponding sections in the Uniform Declaratory Judgments Act. Mo., R. S. A.; 9 U. L. A., p. 215 et seq. And the Federal Act, Jud. Code, sec. 274d, 28 U. S. C. A., sec. 400, also is sufficiently similar to make the decisions of the Federal courts persuasive in the interpretation of these statutes. Our statutes bearing on the question are as follows:[2]

Sec. 1126. "The circuit courts . . . of this state, within their respective jurisdictions shall have *power* to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

Sec. 1131. "The court may *refuse* to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

Sec. 1133. "Further relief based on a declaratory judgment or decree *may* be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. . . ."

Sec. 1137. "This law is declared to be remedial; its purpose is to settle and to afford *relief from uncertainty and insecurity* with re-

---

[2]These and all other references to our statutes are to R. S. Mo., 1939 and Mo., R. S. A. Italics in quotations are ours unless otherwise noted.

spect to rights, status and other legal relations; and is to be liberally construed and administered.''

The doctrine is settled that relief by declaratory judgment was not intended to displace all existing remedies; that under the foregoing and similar statutes the courts have a wide discretion in administering it; but that the discretion so exercised must be a sound judicial discretion based on good reason, and calculated to serve the purposes for which the legislation was enacted, namely, to afford relief from uncertainty and insecurity.[3]

The question here 'is as to the scope of that discretion in a state court where there is another state action pending or closely in prospect. It was ably argued in 23 Am. Bar Ass'n Journal (Morrison) 788, 791, that the discretion cannot be expressive only of the personal concepts of the particular judge, but must be controlled by established rules of law. That may be conceded, where such rules have been established. But Delno v. Market St. Ry. Co., 124 Fed. (2d) 965, 967(1), pointed out that in the commonly accepted legal sense, and as applied to declaratory actions, discretion is: ''The power exercised by courts to determine questions *to which no strict rule of law is applicable,* but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.'' (Citing 1 Bouvier Law Dictionary, Rawles' 3 Rev., p. 884.)

Professor Borchard declares the discretion, involving as it does matters of policy, must be broad but subject to appellate review; that it is a judicial discretion ''hardened by experience into rule,'' as is true in the grant of equitable remedies; that the remedy has been developed by ''empirical demonstration of the practical utility of the declaration''; and that the scope of its application was gradually broadened in England, with ''convenience, expediency, need, desirability, public interest, or policy the common criteria of the grant of the declaration.'' Borchard, Declaratory Judgments (2 Ed.), pp. 293-4, 296-8, 307, 348. And if these considerations [29] can be listed on the credit side of the judicial ledger when they argue in favor of the use of the remedy, of course they should be counted as liabilities when they argue the other way. Further, since the remedy is comparatively novel in this country, it necessarily follows that we must consult our own conditions in establishing rules for its application;[4] and where there are no rules, courts may look to those which are

[3]Borchard, Declaratory Judgments (2 Ed.), p. 293 et seq.; Anderson, Declaratory Judgments, sec. 172, p. 525: 16 Am. Jur., sec. 14, p. 287; 142 A. L. R., p. 17, annotation; Altvater v. Freeman, 319 U. S. 359, 87 L. Ed. 1035, 1039, 63 S. Ct. 1115, 1119; Brillhart v. Excess Ins. Co., 316 U. S. 491, 494, 86 L. Ed. 1620, 62 S. Ct. 1173; 26 Washington Univ. Law Quarterly (Hyde) 468, 480 et seq.; Liberty Mut. Ins. Co. v. Jones, 344 Mo. 932, 954, 130 S. W. (2d) 945, 953(1)1, 125 A. L. R. 1149.

[4]5 R. C. L., sec. 2, p. 806; 11 Am. Jur., sec. 2, p. 153; 12 C. J., sec. 5, p. 178; 15 C. J. S., sec. 2, p. 612; State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839, 847, 85 S. W. (2d) 1026, 1029(1).

applicable by analogy. Several recent high Federal decisions so hold either expressly or by implication, it seems to us.[5]

In the Haworth case, just cited in the margin, the United States Supreme Court established that the Federal Declaratory Judgment Act did not add anything to the jurisdiction of that court, but was procedural only. Following next, and relying on that decision, the Quarles case ruled that the granting of pure declaratory relief, without executory or coercive relief, was an extraordinary remedy, to which the discretionary powers of courts of equity could be applied. Two years later in the Massachusetts-Missouri case, supra, a suit for a declaratory judgment, the Supreme Court said (we omit citations in text): ''We have observed that the broad statement that a court having jurisdiction must exercise it is not universally true but has been qualified in certain cases where the federal courts may, in their discretion, properly withhold the exercise of the jurisdiction conferred upon them where there is no want of another suitable forum. Grounds for justifying such a qualification have been found in 'considerations of convenience, efficiency and justice' applicable to particular classes of cases.'' It is true the court earlier in the opinion had concluded the proposed bill in that case did not state a justiciable controversy, but the quoted statement was made ex gratia on the hypothesis that it could be treated as stating one.

And recently in the Great Lakes case, supra (marginal note 5) the same court, speaking through Chief Justice Stone, likened a suit for a declaration of rights in anticipation of their threatened infringement, to a bill quia timet or to quiet title; and observed that the reports of both the Senate and House Committees on the bill for Federal declaratory judgments pending in the Congress, showed it was in legislative contemplation that a large measure of discretion would be vested in the Federal courts. Then the opinion held that notwithstanding the Act excluded from its application only cases involving federal taxes, yet it did not follow, on the theory *exclusio unius est inclusio alterius,* that the courts must grant declaratory relief in all other kinds of proceedings, shorn of discretionary authority to withhold it in appropriate instances.

There are a number of insurance cases dealing with the discretionary power of courts to grant or withhold executory relief, where a suit therefor was pending in a Federal court and an executory action involving the same parties and issues was pending in a State court. In a majority of these the executory State action had been brought first, and Federal declaratory relief was withheld or

---

[5]Great Lakes Dredge & Dock Co. v. Huffman, 319 U. S. 293, 87 L. Ed. 1021, 1024, 63 S. Ct. 1070, 1074(9, 12); Massachusetts v. Missouri, 308 U. S. 1, 19, 84 L. Ed. 9, 60 S. Ct. 43; Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 240, 81 L. Ed. 617, 57 S. Ct. 461, 108 A. L. R. 1000; Aetna Casualty & Surety Co. v. Quarles, supra, 92 Fed. (2d) l. c. 323(5).

stayed.[6] But the same was done, or held proper, in The Quarles, Anderson and Goldwyn cases cited below,[7] although the State executory action had followed the Federal suit. In the Koch case where it was said to be a close question, declaratory [30] relief was not withheld. And in the Brannen case a motion to dismiss the declaratory action was sustained in order to permit the insured to *bring* an action in the State court. But for a correct understanding of these Federal cases, it should be kept in mind that identical actions may be prosecuted concurrently in Federal and State courts, or other courts of different sovereignties or legal jurisdictions;[8] and that any deference shown is through comity; or in declaratory actions also because the statute itself allows that discretion.

In the present instance both actions are pending in our state circuit courts, which are in the same sovereignty and have coordinate jurisdiction. In these, ordinarily the second action in point of filing and service of process would be subject to abatement, as relator contends.[9] But, while authorities on the point are rare or non-existent in Missouri, we have no doubt that respondent had the discretionary power to stay proceedings in the declaratory proceeding pending before him, awaiting the determination of defendant Hunt's subsequent action on the policy in Caldwell county.

It is said in 1 C. J. S., sec. 133c(1), p. 1406: "The power of the court to grant, in a proper case, a stay of proceedings on the ground that another action is pending is undoubted, but whether in a particular case it should be granted on such ground is discretionary. . . . Ordinarily, proceedings in the first action will not be stayed on account of the pendency of another action subsequently commenced, but may properly be stayed where the second action will dispose of the

---

[6]Borchard, Declaratory Judgments, pp. 312, 653; Anderson, Declaratory Judgments, sec. 174, p. 530; Brillhart v. Excess Ins. Co., supra, 316 U. S. l. c. 495, 86 L. Ed. 625, 62 S. Ct. 1175; Western Electric Co. v. Hammond, 135 Fed. (2d) 283, 287(10); 142 A. L. R., p. 41, Annot.; 135 A. L. R., p. 934, annot.

[7]142 A. L. R., p. 49, annot.; 135 A. L. R., p. 948, annot.; 81 L. Ed. 173, 177, annot.; Aetna Casualty & Surety Co. v. Quarles, supra, 92 Fed. (2d) l. c. 325(15, 16); Anderson v. Aetna Life Ins. Co., 300 U. S. 203, 215, 89 Fed. (2d) 345, 347(1); 57 S. Ct. 377, 380(11), 81 L. Ed. 605, 611(9), 111 A. L. R. 1268, 1274(9); Samuel Goldwyn, Inc., v. United Artists Corp., 113 Fed. (2d) 703, 709(13); U. S. Fidel. & Guar. Co. v. Koch, 102 Fed. (2d) 288, 294(4); Mutual Life Ins. Co. v. Brannen, 31 Fed. Supp. 123.

[8]Anderson, Declaratory Judgments, sec. 55, p. 153; 1 C. J. S., secs. 63, 67, pp. 97, 101; 1 C. J., sec. 122, p. 87; 1 Am. Jur., sec. 40, p. 44; Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U. S. 270, 85 L. Ed. 826, 61 S. Ct. 510; Standard Acc. Ins. Co. v. Meadows, 125 Fed. (2d) 422, 424(3); Cent. Sur. & Ins. Corp. v. Norris, 103 Fed. (2d) 116, 117(2); Carpenter v. Edmonson, 92 Fed. (2d) 895, 897.

[9]State ex rel. Townsend v. Mueller, 330 Mo. 641, 649(5), 51 S. W. (2d) 8, 11(6); State ex rel. Banner Loan Co. v. Landwehr, 324 Mo. 1142, 1147, 27 S. W. (2d) 25, 27-8; State ex rel. Davis v. Ellison, 276 Mo. 642, 208 S. W. 439; In re Est. of Janisch, 232 Mo. App. 1242, 1244, 117 S. W. (2d) 358, 360(1).

entire controversy between the parties and the first will not. . . . ''
See also 1 C. J., sec. 420, p. 1163; 86 L. Ed., p. 177, annotation.

So, likewise, Borchard, Declaratory Judgments (2 Ed.), p. 303, declares: ''Where a party's action is about to begin or has begun, it serves no sensible end to permit his adversary to appear as an equitable actor and start the proceedings for an autonomous declaration that he has a good defense to his opponent's pending or immient action. But where the facts do not show such imminence of suit, or where there is a practical ground for permitting a party . . . to claim and obtain exoneration from a judicial proceeding, there is no reason why the courts should not take cognizance''—of a declaratory action covering the same issues. See further, id., pp. 312, 653.

There is no doubt in our minds that judicial discretion to stay relief in a suit for a declaratory judgment because of another action pending, may take cognizance of subsequent as well as prior executory actions between the same parties on the same issues, where the latter were naturally in contemplation when the declaratory suit was brought and were actually pending before it was heard. It seems clear also that that discretion may consider public policy and interest, efficiency, convenience, economy and the good or bad faith of the party bringing the declaratory action. This latter has been expressly held.[10] In considering the convenience of the declaratory action such facts have been consulted even as the relative distances of the parties and witnesses from the two places of trial.[11] The most important factors under the specific terms of the statutes, Sec's 1131 and 1137, supra, are: (1) whether the plaintiff in the suit for declaratory relief is in a position of uncertainty and insecurity; (2) whether the suit will terminate the uncertainty and insecurity as effectually as the other action; (3) and by no means least, whether public policy and interest will be served.

On the first two of these points, in [31] the instant case the relator's suit merely tenders the single issue of fact that the insured had changed her title and interest in the property by making and partially executing a contract of sale. No ambiguity in the policy is claimed by either party. If relator was involved in insecurity or uncertainty it was the veriest minimum that would be present whenever the relator disputed liability on any such policy. No fact is disclosed indicating the insured intended to leave relator suspended in uncertainty by failing to assert her claim. And when the relator brought its suit the issue was tendered in such manner that it would terminate the

---

[10]Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 Fed. (2d) 474, 475(4); 1 C. J., sec. 420, p. 1163, note 80; 1 C. J. S., sec. 133c(1), p. 1407, notes 94, 95.

[11]Anderson, Declaratory Judgments, sec. 176, p. 534; Ohio Casualty Ins. Co. v. Richards, 27 Fed. Supp. 18; Maryland Casualty Co. v. Faulkner, 126 Fed. (2d) 175, 178(4).

controversy only if the suit was decided in favor of relator. If the trial court should decide relator is liable on the policy, defendant Hunt would still be compelled to enforce that liability, both on the policy and for vexatious delay, in her separate Caldwell county action; or by cross-action in the declaratory suit in a forum selected by relator. We do not say relator had no right to bring its suit that way, or that respondent did not have jurisdiction of it; but we do hold respondent could take these facts into consideration on the motion to stay proceedings, as well as relator's good faith.

■ On the matter of public Policy. In Assoc. Indem. Corp. v. Wachsmith, 2 Wash. (2d) 679, 99 Pac. (2d) 420, 127 A. L. R. 531, the first suit brought was one for a declaratory judgment in the state court, the insurer countering with a subsequent action for direct relief in the Federal court. The decision vigorously asserted that if declaratory suits could be thus "shunted into the discard" by the subsequent bringing of an executory or coercive action, "the Declaratory Judgments Act is more of a joke than an important and effective part of the law of the state." This, of course, would be true where the second action is filed in bad faith, or merely for strategic or obstructive purposes without any real uncertainty or insecurity. But on the other hand, if our practice is to degenerate into a contest of speed, a race to the court house to get one or the other case filed first, the wholesome and ameliorative remedy by declaratory judgment will be prostituted to uses for which it never was intended; and the opportunity for calm negotiation between the parties, with a view to dispensing with litigation in the case, will be destroyed. See Borchard, Declaratory Judgments (2 Ed.), pp. 312, 653.

■ This is not an appeal from a declaratory judgment in which we would be entitled to review the respondent's exercise of his discretionary powers; it is a proceeding in mandamus, an extraordinary remedy requiring proof that no other relief is available to relator, in which a peremptory writ can issue only in a clear case of abuse of discretion. Obviously that is not the situation here. However, we should point out that respondent's return states as his reasons for sustaining the motion to stay proceedings not only that relator's suit was filed in bad faith; but also that it sought to prevent defendant Hunt "from having her said cause (in Caldwell county) and the issues involved therein, tried and determined by a jury."

■ Whether or not respondent had it in mind we do not know, but the fact is that Sec. 1133, supra, permits the granting of "further relief" in a declaratory suit; and Sec. 1134 provides: "When a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions." The controversy stated in the pleadings being such as would be asserted in an action at law by defendant Hunt, she would be entitled to a

jury in the declaratory judgment suit in respondent's court on the facts. Borchard, Declaratory Judgments, pp. 400, 401. She would not be deprived of her constitutional right to a trial by jury merely because the action was in the form of a suit for a declaratory judgment, if by cross-action she should seek "further relief" by way of recovery on the policy and for vexatious delay. See Blair v. Acacia Mut. Life Ins. Co. (Mo. App.), 121 Mo. App. 193, 196, where the cause was tried to a jury. These will be matters for the consideration of the trial court later.

For the reasons stated the alternative writ of mandamus·heretofore issued is quashed. All concur.