OSAGE WATER COMPANY,
Plaintiff–Appellant,

v.

CITY OF OSAGE BEACH, Defendant–
Respondent.

No. 24941.

Missouri Court of Appeals,
Southern District,
Division One.

June 23, 2003.

Gregory D. Williams, Sunrise Beach, for
Appellant.

Michael G. Berry, Hendren and Andrae,
L.L.C., of Jefferson City, for Respondent.

GARRISON, J.

This appeal by Osage Water Company
("Osage Water") from a summary judg-
ment entered against it in favor of the City
of Osage Beach, Missouri ("the City") is a
sequel to our earlier opinion reported at
*Osage Water Co. v. City of Osage Beach,*
58 S.W.3d 35 (Mo.App. S.D.2001) ("*Osage
I*"). Many of the underlying facts are
reported in that opinion, although we note
that some of those facts do not appear in
the record before us in this case. Suffice
it to say that Bayberry Development Co.
II, Inc. ("Bayberry") developed Parkview
Bay ("Parkview Bay"), and Bayberry sold
land in Parkview Bay to Parkview Bay
Development, Inc. ("Parkview"), which
built condominiums in Parkview Bay (the

"condominiums"). Parkview entered into a contract with Osage Water in which it was agreed that Osage Water would furnish water to the condominiums, and Parkview would convey land to Osage Water upon which to drill a water well, and an easement for the construction, operation, maintenance, and repair of all water collection lines as necessary for the proper operation of the water system. Thereafter, Bayberry conveyed to Osage Water a tract of land "[t]ogether with an easement for the operation, maintenance, repair and replacement of the existing water lines and water system now located in or hereafter installed or constructed in [Parkview Bay]."

Osage Water subsequently filed an application with the Missouri Department of Natural Resources ("MDNR") seeking approval of the development of a new water-supply system for the condominiums consisting of a new well, pressure tank, and a 2,075 foot distribution system. That application was approved. Although it is not clear from the record when that work was completed, the record indicates that at some point Osage Water began supplying water from the well to the condominiums through the distribution system.

Osage Water subsequently filed this suit against the City seeking injunctions and damages for what it alleged was the City's interference with its water supply and distribution system in Parkview Bay, as well as the City's operation of a water system using Osage Water's easement and distribution lines. The City filed a motion for summary judgment, which was sustained. We reversed that ruling in *Osage I*. This

appeal stems from the granting of the City's subsequent motion for summary judgment.

The City's latest motion for summary judgment was based on the contention that Osage Water (1) did not have an exclusive right to supply water service to Parkview Bay, (2) did not have an exclusive easement related to the property on which the water distribution system was installed, and (3) did not have authority from the Missouri Public Service Commission ("PSC") when it incurred expenses related to its agreement to supply water to Parkview Bay. The trial court, in granting the City's motion for summary judgment, held that, under the undisputed facts, Osage Water did not have an exclusive right to furnish water utility services to the condominiums. It also held, *inter alia*, that, because of Osage Water's violation of Section 393.170.1,[1] it was not entitled to damages from the City for any expenses it incurred or for revenues it claims it would have earned from operating the system, and that it did not have the clean hands necessary to entitle it to the equitable relief it sought against the City. The trial court held that it would violate public policy to allow Osage Water to ignore the requirements of Section 393.170, and then recover damages and take advantage of the court's equitable powers.

Osage Water relies on five points in this appeal. Points I and III are, at best, of questionable compliance with Rule 84.04(d).[2] In Point IV, Osage Water contends that the summary judgment was error because it has an exclusive easement,

---

1. Section 393.170.1 provides, in pertinent part: "No ... water corporation ... shall begin construction of a ... water system ... without first having obtained the permission and approval of the [PSC]." All references to statutes are to RSMo (2000) unless otherwise indicated.

2. All references to rules are to Missouri Rules of Civil Procedure (2003) unless otherwise indicated.

that no one else may own or operate a water system in Parkview Bay, and that the City, among others, has constructed and operates a water system on property subject to Osage Water's easement. Osage Water contends in Point V that the summary judgment was erroneous because the trial court's action resulted in the City selling water to the public in the area covered by the certificate of convenience and necessity granted by the PSC to it without first acquiring the rights granted by that certificate by either purchase or condemnation.

■ The decisive point, however, is Point II in which Osage Water contends that the summary judgment was error because the trial court allowed the City to collaterally attack the order of the PSC by imposing sanctions on it for commencing operation of its water system contrary to the provisions of Section 393.170, in that the PSC, which has jurisdiction to impose such sanctions, declined to do so. This point is decisive because, as set out below, regardless of whether the trial court erred in granting summary judgment as contended by Osage Water in its other points, if the trial court's action is not erroneous as contended by Osage Water in Point II, the entry of the summary judgment must be affirmed.

Osage Water concedes that it began construction of the water system without first obtaining permission from the PSC to do so, but says that it did not begin those activities until after it had applied for a certificate of convenience and necessity covering Parkview Bay. It also notes that the PSC "held that [it] did not act in bad

faith in so doing, and did not impose sanctions on [it] for its actions." The issue of Osage Water's violation of Section 393.170 was raised before the PSC by the filing of a complaint by the Osage Beach Fire Protection District ("the District"), which requested that the PSC order Osage Water to stop providing water or, alternatively, to stop charging for it. In the order entered by the PSC granting Osage Water a certificate of convenience and necessity, it found that, while the District had requested that Osage Water be ordered to stop providing water without a certificate, it "did not request sanctions or penalties against [Osage Water]." The PSC found that Osage Water had applied for a certificate before providing water service to Parkview Bay,[3] and that it had not acted in bad faith. Osage Water argues, *inter alia*, that "[w]hile [it] may not have clean hands with respect to compliance with the authority of the [PSC] because it commenced construction of its water system before receiving approval from the [PSC], that is a matter between [Osage Water] and the [PSC], and the [PSC] has chosen not to impose penalties upon [Osage Water] for that action." It contends that the decision of whether or not to impose a sanction for a violation of Section 393.170 "rests solely within the discretion of the [PSC]."

Osage Water also argues that the City itself came into court with unclean hands. In this regard, it argues that the City authorized it to proceed with the project, knew that it had applied to the PSC for a certificate, that it had obtained a construction permit and a permit from the MDNR to dispense water, and had completed the evidentiary hearing before the PSC. Not-

3. Osage Water applied for a certificate of convenience and necessity before providing service in Parkview Bay, but that application was dismissed because of Osage Water's lack of a franchise from the City. Shortly after its motion for rehearing was denied, it reapplied and, as indicated, received a certificate. In the order granting the certificate, the PSC concluded that a franchise was not a prerequisite to the granting of a certificate where public rights of way are not involved.

withstanding this conduct by the City, Osage Water argues that the City "caused [Osage Water's] water lines to be disconnected from [Osage Water's] supply and connected to the City's supply."

Osage Water's failure to cite relevant authority in support of this point constitutes a fatal flaw. In addition to its citation of Section 393.170 (the statute Osage Water admits violating, and which was relied on by the trial court in holding that Osage Water was not entitled to equitable relief or to recover damages), it cites the order of the PSC referred to above in which the PSC granted Osage Water the certificate of convenience and necessity. Osage Water cites that order to demonstrate that the PSC held that it had not acted in bad faith in beginning construction without obtaining permission from the PSC to do so, and that the PSC did not impose sanctions on it for its actions. The PSC order noted, however, that while the District had filed a complaint with it concerning Osage Water's providing of water without a certificate, it "did not request sanctions or penalties against [Osage Water]." In its order, the PSC said that it was granting a certificate of convenience and necessity to Osage Water which would make the District's complaint moot, and that, since Osage Water had applied for a certificate before it began providing service, it did not appear that it had acted in bad faith. Nothing about that order, however, supports Osage Water's contention in this point that the decision of whether it had clean hands in the context of this suit is determined entirely by the PSC's finding.

Osage Water also cites Sections 386.570, 386.580, 386.590, and 386.600. Section 386.570 provides for the imposition of monetary penalties upon corporations, persons or public utilities for the violation of Chapter 386, any other law, or any order or requirement of the PSC. Section 386.580 makes it a misdemeanor for an officer, agent or employee of a corporation or public utility to violate or aid or abet the violation by a corporation, person or public utility of any provision of Chapter 386 or any other law. Section 386.590 makes the penalties under Chapter 386 cumulative of each other, and sanctions an action to recover the penalties imposed. Section 386.600 authorizes actions to recover penalties or forfeitures under Chapter 386, and provides that the penalties and forfeitures shall be remitted if it is shown that the defendant was, in good faith, prosecuting a suit to review the order or decision of the PSC during the time the penalties were sought. Nothing in these statutes establishes that their existence would prevent the trial court in this action from relying on Osage Water's statutory violation in deciding that it was not entitled to seek relief from that court.

Finally, Osage Water argues that the denial of injunctive relief based upon an issue that was "fully and fairly litigated before the [PSC] and resolved in favor of [Osage Water] amounts to nothing more than a collateral attack upon the findings and decision of the [PSC]." It also argues that after the decision of the PSC the City "unlawfully filed a Petition for Writ of Review of that decision," citing *In re Application of Osage Water Co.*, 51 S.W.3d 58 (Mo.App. W.D.2001). That case originated when the City filed suit in the circuit court of Cole County challenging the certificate of convenience and necessity granted to Osage Water by the PSC. The trial court reversed the grant of that certificate, but the western district of this court reversed and upheld the PSC order granting the certificate. Again, that case does not provide authority to support the premise of this point.

Similarly, Osage Water cites no authority in support of its contentions that the PSC's determination of the lack of bad faith for its violation of Section 393.170, when no penalties or forfeitures were sought before that agency, is binding on the trial court in this case, that the decision of whether to enter sanctions for such a violation is in the exclusive jurisdiction of the PSC, or that the PSC's finding precludes the trial court from denying equitable relief.[4] Likewise, no authority is cited for the proposition that this is a collateral attack, and if so, that it is impermissible. As indicated above, Osage Water acknowledges its statutory violation in stating its argument that the violation "is a matter between [Osage Water] and the [PSC]," another proposition unsupported by citation to relevant authority. Finally, Osage Water argues that the City's hands are not clean in this matter, but cites no authority in support of its argument that this contention, if true, makes a difference here.

▮ In short, Osage Water cites no relevant authority in support of this point on appeal, and does not contend that such authority is unavailable. It is clearly Osage Water's obligation, as the appellant, to demonstrate error by the trial court, and to cite appropriate and available precedent if it expects to prevail. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978); *In re Marriage of Spears,* 995 S.W.2d 500, 503 (Mo.App. S.D.1999). If the point is one for which it is believed that precedent for or against it is unavailable, counsel should specifically so state, explaining why citations are unavailable. *Thummel* at 687. The dilemma presented to the appellate court when an appellant fails in this regard has been described as follows:

When a party fails in his duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding the case on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume this role. Not only would this be inherently unfair to the other party on appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

*Phelps v. Jeff Wolk Const. Co.,* 803 S.W.2d 641, 646 (Mo.App. E.D.1991) (citations omitted). If we undertook to research and perhaps build an argument for an appellant who had not discharged its duty in that regard, we would necessarily be placed in the position of an advocate. It is not the proper function of the appellate court to act as an advocate for any party to an appeal. *Thummel* at 686. It would be unfair to the parties if this were not the rule. *Id.* Therefore, where, as here, an appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the point abandoned. *Shiyr v. Pinckney,* 896 S.W.2d 69, 71 (Mo.App. S.D. 1995). We do so here. Point II is deemed abandoned.

▮ Because of the abandonment of this point, the trial court's application of the clean hand's doctrine and its reference to public policy in entering summary judgment and denying relief to Osage Water remains unchallenged. An appellate court

4. Osage Water does not raise an issue about whether the clean hands doctrine should apply to its claim for damages.

must sustain the trial court's grant of summary judgment if, as a matter of law, it is sustainable on any theory. *Preston v. Preston,* 823 S.W.2d 48, 49 (Mo.App. E.D. 1991). Since the trial court's application of the "clean hands" doctrine in granting summary judgment has not been successfully challenged by Osage Water, we need not review the challenges to the other theories upon which the trial court entered this judgment. The judgment is, therefore, affirmed.

PREWITT, J., and BARNEY, J., concur.