Margo REID, Appellant,

v.

Sarah STEELMAN, et al., Respondents.

No. WD 65821.

Missouri Court of Appeals, Western District.

Oct. 24, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 2006.

Application for Transfer Denied Jan. 30, 2007.

J. Brian Baehr, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Douglas Leyshock, Assistant Attorney General, Jefferson City, MO, for respondents.

Before BRECKENRIDGE, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Margo Reid sought declaratory relief compelling the State of Missouri to pay from the Missouri State Legal Expense Fund ("SLEF") damages from the settlement of an action against a former employee of the Missouri Department of Health. Reid appeals the Cole County circuit court's grant of the State's motion to dismiss the current action, because she contends the court erred in deciding on the grounds of res judicata that a prior declar-atory judgment determined that the State was not obligated to pay.

In February 2001, Reid was involuntarily committed due to mental illness to the Guhleman Forensic Center at the Fulton State Hospital and operated by the Missouri Department of Mental Health ("DMH"). While a resident there, she was sexually abused on multiple occasions by Patrick Downey, a DMH security aide. The abuse occurred at Guhleman Forensic Center while Downey was on duty. After investigation of these incidents, DMH terminated Downey's employment on July 6, 2001, on the grounds that his actions constituted sexual abuse of a client in violation of the employee handbook. On September 6, 2001, Reid sued Downey, among others, in the United States District Court, Western District of Missouri, alleging Downey and the Guhleman Center violated her civil rights under 42 U.S.C. § 1983.

On January 13, 2003, Downey requested that the Missouri Attorney General assume his defense in the litigation pursuant to section 105.711.[1] Section 105.711 creates the SLEF, and states in pertinent part:

1. There is hereby created a "State Legal Expense Fund" which shall consist of moneys appropriated to the fund by the general assembly and moneys otherwise credited to such fund pursuant to section 105.716.

2. Moneys in the state legal expense fund shall be available for the payment of any claim or any amount *required by any final judgment* rendered by a court of competent jurisdiction against:

. . . .

(2) *Any officer or employee of the state of Missouri or any agency of the state,* including, without limitation, elected officials, appointees, members of

---

1. All statutory references are to RSMo (2000) unless otherwise noted.

state boards or commissions, and members of the Missouri national guard upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state, . . .

. . . .

5. All payments shall be made from the state legal expense fund by the commissioner of administration with the approval of the attorney general. . . . .

. . . .

The state legal expense fund shall be the exclusive remedy and shall preclude any other civil actions or proceedings for money damages arising out of or relating to the same subject matter against the state officer or employee, or the officer's or employee's estate. No officer or employee of the state or any agency of the state shall be individually liable in his or her personal capacity for conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state. . . . .

(Emphasis added). Section 105.716.1 provides: "Any investigation, defense, negotiation, or compromise of any claim covered by sections 105.711 to 105.726 shall be conducted by the attorney general[.]" *Cates v. Webster*, 727 S.W.2d 901, 904 (Mo. banc 1987). For coverage to apply, it must be shown that: "(1) [the actor] was an officer or employee of the state or any agency thereof; *and* (2) the claim is against conduct which arose out of and was performed in connection with [the actor's] official duties on behalf of the state or any agency thereof." *Id.*

In response to his request, the Attorney General notified Downey on January 17, 2003, that the State would not represent him and that the SLEF was not obligated to pay any claim resulting from a judgment against Downey. The Attorney General found the sexual abuse did not arise out of Downey's official duties nor was it committed in connection with official duties. Furthermore, while Reid's federal civil lawsuit was pending, the Attorney General, Jay Nixon, and the Commissioner of Administration, Jacqueline White,[2] filed a petition for declaratory judgment in the circuit court of St. Francois County against both Reid and Downey. Nixon sought judgment declaring Missouri was not required to represent Downey or pay from the SLEF a judgment or settlement issued against Downey.

Reid's attorney timely answered the petition, denying that she had knowledge of Downey's dismissal from employment and that his actions were not within the scope of his employment. On October 27, 2003, the Attorney General filed a motion for summary judgment, contending that DMH's determination of the facts that led to Downey's firing supported that "Downey's conduct did not arise out of and was not performed in connection with his official duties on behalf of the State of Missouri or an agency thereof." He further requested that those facts be used to determine that the SLEF be adjudged not liable for potential monetary judgment in the ongoing federal action.

In her response to the motion filed on December 8, 2003, Reid contended that a genuine issue of material fact existed as to whether Downey's conduct fell within the scope of his job, since his actions "occurred while he was employed by and under the direct supervision of the state; at a State

---

2. Under the applicable statute, section 105.711.5, the Attorney General must approve any payments of funds made by the Commissioner of Administration from the SLEF.

mental facility; in the capacity of jailer-custodian; and while he was 'on the clock.'" The response further contended that Reid should not be bound by the determinations of DMH as to whether Downey's conduct was beyond the scope of his employment because she was not a party to the proceedings finding grounds for Downey's dismissal from employment. Reid did not challenge the subject matter jurisdiction of the court or protest that the issues were not ripe for review.

On March 3, 2004, the St. Francois County circuit court granted the Attorney General's motion for summary judgment, and without elaborating on the grounds for that decision, stated:

> Upon review of plaintiffs' Motion for Summary Judgment and after opportunity for all parties to be heard on said motion, the Court enters judgment in plaintiffs favor. The Court hereby declares that pursuant to § 105.711 et seq. RSMo 2000, the Missouri Attorney General has no statutory duty to assume the defense of claims asserted by defendant Reid against defendant Downey in *Reid v. Downey, et al.,* 2:01–4185–CV–C–SOW; (2), a federal lawsuit now pending in the Western District Court of Missouri. The Court further declares that neither the Missouri Attorney General nor the Commissioner of Administration have any obligation to expend or authorize the expenditure of any monies from the Missouri Legal Expense Fund for payment of any settlement or judgment resulting from claims asserted against defendant Downey by defendant Reid in cause number 2:01–4185–CV–C–SOW.

On March 25, 2004, Reid filed a motion to set aside the summary judgment, contending that her attorney had failed to appear at a rescheduled hearing on the motion for summary judgment on February 27, 2004, because he received information from the circuit court that the hearing had been cancelled. That motion was denied.[3] Reid did not appeal the decision.

Reid's federal civil rights lawsuit against Downey was settled, and on September 16, 2004, the United States District Court ordered judgment in favor of Reid in the amount of $200,000. In its order, the District Court referenced the stipulation of facts and consent to judgment signed by both parties, which said in pertinent part:

3. During said time [while Reid was committed to the Guhleman Center of the Fulton State Hospital], [Downey] was employed by the State of Missouri in the capacity of security aid[e] at the Guhleman Center.

4. During said time, [Downey] on three occasions engaged in sexual activity with [Reid] on the premises of the Guhleman Center while he was on duty.

5. These incidents ultimately resulted in the termination of [Downey's] employment by the State of Missouri for sexual abuse of [Reid].

6. [Downey's] sexual activity with [Reid] arose out of and was performed in connection with his official duties on behalf of the State of Missouri.

7. [Downey's] conduct with respect to [Reid] was performed under color of law.

8. [Downey's] conduct with respect to [Reid] shocks the conscience and violated [Reid's] substantive due process right to bodily integrity under

---

3. Neither party of record in this appeal provided a copy of any court record denying the motion to set aside the summary judgment.

the 14th Amendment to the United States Constitution.

On November 24, 2004, Reid filed a demand with the State for the payment of the $200,000 judgment from the SLEF. The demand was denied. On February 23, 2005, Reid filed a petition for declaratory judgment in Cole County, naming the State Treasurer, Sarah Steelman, and Commissioner of Administration of the State of Missouri, Michael Keethley,[4] seeking payment for the judgment, arguing that she had met all the requirements under Section 105.711 for payment.

In response, the Attorney General filed a motion to dismiss Reid's petition, on the grounds that the action was barred by the doctrine of res judicata. The motion argued that the identity of the thing sued for, the cause of action, the parties to the action, and the quality of the person against whom the claim is made are identical to the issues addressed in the prior declaratory action, brought by the Attorney General in St. Francois County circuit court in March 2004. Reid filed a response to the motion to dismiss on May 12, 2005, contending the doctrine of res judicata was inapplicable. She argued that the judgments represented different things sued for and that her identity was different in that she was now a judgment creditor. Furthermore, she contended that the St. Francois County court lacked subject matter jurisdiction because the declaratory action was not ripe for determination at the time it was made, and that the Attorney General had an adequate remedy at law already existing in the federal lawsuit to litigate the issues decided in the St. Francois County declaratory judgment. Without elaborating findings of fact, the circuit court sustained the State's motion to dismiss on July 28, 2005. Reid filed a timely notice of appeal.

In the first two points of her appeal, Reid contends that two of the required elements for the defense of res judicata to apply were not met, and, therefore, the circuit court's dismissal was inappropriate. In her first point, Reid contends that, at the time of the St. Francois County declaratory judgment, there was pending federal litigation in her suit against Downey and merely the possibility of a claim for damages but no judgment. The St. Francois County action concerned the possibility of the SLEF compensation, depending on the outcome of the federal suit, while the Cole County action concerned actual compensation from the SLEF. Therefore, the "thing" sued for is different. Also, Reid contends in her second point that another prong, the "identity of the quality of the person," was not met. At the time of the St. Francois County declaratory judgment, she was merely a claimant, but now, after a final judgment awarding her damages in the federal lawsuit, she is a judgment creditor.

■ Our review of the Cole County circuit court's dismissal of Reid's declaratory judgment action is de novo, as the ruling on the motion was based upon the applicable law and the record the parties had submitted. *Cmty. Care Ctr. of Lemay v. Mo. Health Facilities Review Comm.,* 92 S.W.3d 232, 234 (Mo.App. W.D.2002). When the circuit court does not state a basis for the dismissal, "we presume that dismissal was based on the grounds stated in the motion to dismiss and will affirm if dismissal was appropriate on any ground supported by the motion to dismiss." *Ar-*

---

4. The state treasurer has no duty under the SLEF statutes; however, the Commissioner of Administration pays claims from the SLEF upon the approval of the Attorney General. Section 105.711.5. Keethley succeeded Jacqueline White, the Commissioner of Administration, in office at the time of the St. Francois declaratory judgment.

*nold v. Am. Family Mut. Ins. Co.*, 987 S.W.2d 537, 539 (Mo.App. W.D.1999). The only ground asserted by the Attorney General in his motion to dismiss was that Reid's action was barred under the doctrine of res judicata because of the earlier St. Francois County circuit court judgment.

■ Res judicata will bar a suit of the same subject matter only if the second suit is materially similar to the first in four key regards.

> "For res judicata to adhere, 'four identities' must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made."

*King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991) (citing *Norval v. Whitesell*, 605 S.W.2d 789, 790 (Mo. banc 1980)). If any of the identities is lacking, then the second suit will be allowed to proceed.

■ The Latin term "res judicata" translates to "a thing adjudicated." *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo.2002) (citing BLACK'S LAW DICTIONARY 1312 (7th ed.1999)). While reflecting on this translation, the *Chesterfield* court stated:

> The key question is what is the "thing"—the claim or cause of action—that has previously been litigated? A claim is "[t]he aggregate of operative facts giving rise to a right enforceable by a court." The definition of a cause of action is nearly the same: "a group of

operative facts giving rise to one or more bases for suing." Whether referring to the traditional phrase "cause of action" or the modern terms "claim" and "claim for relief" used in pleading rules such as Rule 55.05, the definition centers on "facts" that form or could form the basis of the previous adjudication.

64 S.W.3d at 318 (internal citations omitted). "Separate legal theories are not to be considered as separate claims, even if 'the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'" 821 S.W.2d at 501 (citing *Siesta Manor, Inc. v. Cmty. Fed. Sav. & Loan Ass'n*, 716 S.W.2d 835, 839 (Mo.App.1986)).

> Unlike collateral estoppel, [res judicata] applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Id.* (citations omitted). It will thus preclude arguments actually litigated in the first action as well as arguments which ought to have been brought at that first action.

■ It appears from the record that the operative facts underlying the Attorney General's petition for declaratory judgment and Reid's current action concern Downey's tortious conduct against Reid and determination of appropriate civil relief.[5] Reid fails to address the definition of

---

**5.** Reid did not include a copy of her complaint in the federal lawsuit in her brief filed with this court. Therefore, we could only speculate as to whether the underlying facts in the cases were the same or different than

those in the St. Francois County declaratory judgment action at the time of that action. However, from the stipulation of facts in the settlement of Reid's federal lawsuit, it is ap-

"the thing sued for," and, furthermore, fails to explain why this should not operate as a bar to her first and second point.

Her second point suffers an identical fatal flaw. In both declaratory actions, her role is substantially similar. In the first action, she is a litigant defending her right to seek compensation from the SLEF and in the second, she is a litigant seeking that same compensation. In the current case, these roles are materially similar. Assuming Reid knew that Downey was judgment-proof, she had more than ample incentive, even before the issuance of the $200,000 award, to litigate the suit in St. Francois County.

 Furthermore, Reid fails to support her first two claims with citations to any relevant Missouri precedent or persuasive precedent from sister jurisdictions. She presents no precedent or argument for deviation from existing law concerning the substantive difference in a claim versus a final judgment regarding the thing sued for, or the relevant difference of claimant versus judgment creditor regarding the identity of the quality of the person. Reid, as the appellant, is obligated to demonstrate error by the trial court, and to cite appropriate and available precedent if she expects to prevail. *Osage Water Co. v. City of Osage Beach,* 108 S.W.3d 751, 755 (Mo.App. S.D.2003) (citing *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978)). "If the point is one for which it is believed that precedent for or against it is unavailable, counsel should specifically so state, explaining why citations are unavailable." *Id.* (citing *Thummel,* 570 S.W.2d at 687). Because the appellant "neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the point abandoned." *Id.* (citing *Shiyr v. Pinckney,* 896 S.W.2d 69, 71 (Mo.App. S.D. 1995)). Therefore, we consider Reid's first two points to be abandoned.

In her third and fourth points, Reid contends that the St. Francois County summary judgment was void ab initio and, thus, inapplicable to bar her demand for payment from the SLEF. Reid argues that the St. Francois County court lacked subject matter jurisdiction because the court abused its discretion in granting declaratory relief.[6] The court, according to Reid, abused its discretion in two ways: first, it granted declaratory relief when an adequate legal remedy existed, namely the State could have intervened in the federal case; and, second, the case was not ripe for adjudication.

 "[A] void judgment may be collaterally attacked at any time in any proceeding ... in which its validity is questioned by anyone with whose rights or interests it conflicts." *Hussmann Corp. v. UQM Elecs., Inc.,* 172 S.W.3d 918, 920 (Mo.App. E.D.2005). A judgment is void if the "court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process." *Taylor v. Taylor,* 47 S.W.3d 377, 385 (Mo.App. W.D.2001) (citations omitted). "A void judgment can have

---

parent that the cases are based on the same operative facts.

6. Reid states in her appellate brief: "When a declaratory judgment claim improperly invokes § 527.010 R.S.Mo. because an adequate legal remedy already exists, that declaratory judgment claim fails to state a cause of action and the trial court lacks subject matter jurisdiction to enter a declaratory judgment."

Reid goes on to recite Missouri law for the proposition that failure to state a claim is a jurisdictional defect. *See Commercial Bank of St. Louis County v. James,* 658 S.W.2d 17 (Mo. banc 1983) (finding a jurisdictional defect where plaintiff failed to properly state a claim of interpleader because only one party had a claim against plaintiff).

no conclusive effect, either as res judicata or as an estoppel, because the proceeding that culminated in the void judgment was itself without integrity." *Hussmann,* 172 S.W.3d at 920 (citing *Wright v. Mullen,* 659 S.W.2d 261, 263 (Mo.App. W.D.1983)). In order for this court to consider the circuit court's action denying her claim for payment from the SLEF, we must, therefore, determine that the underlying St. Francois County declaratory judgment was void ab initio.

In her third point, Reid contends that the St. Francois County circuit court lacked subject matter jurisdiction to declare that Downey's actions were outside the scope of his employment because this issue was already part of her suit against Downey in federal court, and that where an adequate remedy at law exists, declaratory judgment is inappropriate. Similarly, in her fourth point, she contends that the circuit court lacked subject matter jurisdiction to declare that any judgment possibly resulting from her federal suit against Downey was not eligible for payment from the SLEF, because the possibility of a judgment was merely speculative at the time of the St. Francois County summary judgment and, therefore, not ripe for determination by the circuit court at that time. Reid, therefore, contends that judgment was void due to jurisdictional defect and should not be used to bar her claim for payment after obtaining judgment against Downey.

■ Our review in this instance, however, is affected by the fact that, while Reid filed a motion to set aside the St. Francois County declaratory judgment as a default judgment, she did not appeal the denial of that motion nor did she appeal the summary judgment itself. Generally, the validity of a judgment can only be attacked by direct appeal, not by collateral attack. *Hussmann,* 172 S.W.3d at 921.

The need for certainty and finality of judgments compels this rule. *Taylor,* 47 S.W.3d at 384.

■ The authority of a court to hear a controversy requires three elements: "the court must have jurisdiction of the subject matter, jurisdiction of the res or the parties, and jurisdiction to render the particular judgment in the particular case." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 21 (Mo. banc 2003).

> Subject-matter jurisdiction concerns "the nature of the cause of action or the relief sought" and exists only when the court "has the right to proceed to determine the controversy or question in issue between the parties, or grant the relief prayed." In other words, subject-matter jurisdiction is "the power to hear and determine cases of the general class to which the proceedings in question belong . . . ." "A court obtains jurisdiction of the subject matter by operation of law . . . ." And, although a court may be a court of general jurisdiction, when it engages in the exercise of a special statutory power, the court is confined strictly to the authority given by the statute.

*Id.* at 21–22 (internal citations omitted).

■ There is no question that circuit courts have subject matter jurisdiction to entertain declaratory judgment actions. §§ 527.010, 527.120 RSMo. "Rule 87 of [the Supreme Court] tracks the statutes found in Chapter 527 and, as does the applicable statute, declares relief by way of declaratory judgment is available 'in any instance in which it will terminate a controversy or remove an uncertainty.'" *Jarman v. Eisenhauer,* 744 S.W.2d 780, 782 (Mo. banc 1988). However, section 527.060 gives courts discretion in the exercise of this judicial authority.

■ Of course, judicial discretion in granting declaratory relief may be, and is in several instances, constrained by the legislature. General jurisdiction is not sufficient to empower a court to act when the court is exercising a special statutory power. *Mo. Soybean Ass'n*, 102 S.W.3d at 22. For example, because the legislature has strictly confined a court's authority in section 536.050.1 to rendering a declaratory judgment regarding the validity of an administrative rule, subject matter jurisdiction only exists if the challenged administrative action is actually a rule. *Id. See also State ex rel. King v. Kinder*, 690 S.W.2d 408, 409 (Mo. banc 1985) (holding that a court of general jurisdiction exercising the special statutory power such as a trial de novo set out in section 302.535.1, RSMo Cum.Supp.1984, exceeds its jurisdiction by issuing a stay because "the statute emphatically restricts the court's power" to do so). The case before us does not involve such a special legislative restriction to the court's general jurisdiction.

Reid cites *Harris v. State Bank & Trust Co. of Wellston*, 484 S.W.2d 177, 178–79 (Mo.1972), to support her argument that when an adequate alternate legal remedy exists, a circuit court lacks subject matter jurisdiction to enter a declaratory judgment. However, *Harris* is inapposite. It merely holds "that the [trial court] did not err in declining to proceed with a declaratory judgment action inasmuch as other adequate remedies were available." *Int'l Minerals & Chem. Corp. v. Avon Prods., Inc.*, 817 S.W.2d 903, 908 (Mo. banc 1991). "The discretion in determining whether to enter a declaratory judgment belongs to the trial court" and "[w]e will reverse on procedural grounds only for abuse of discretion." *Id.*

■ "The considerations in the exercise of discretion include public policy and interest, efficiency, convenience, economy, the good or bad faith of the party bringing the declaratory judgment action, and whether the trial court's administration of the Declaratory Judgment Act served the purposes for which the legislation was enacted." *Preferred Physicians Mut. Mgmt. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group*, 916 S.W.2d 821, 825 (Mo.App. W.D.1995) (citing *State ex rel. U.S. Fire Ins. Co. v. Terte*, 351 Mo. 1089, 176 S.W.2d 25, 30 (banc 1943)). In finding that the circuit court abused its discretion in granting summary judgment where an adequate legal remedy existed, this court said that appellate review of the circuit court's exercise of discretion is dependent upon the facts of each case. *Id. See also Van Dyke v. LVS Bldg. Corp.*, 174 S.W.3d 689, 693 (Mo.App. W.D.2005) (finding that "it is well settled that a declaratory judgment action will not lie where the declaration is being sought to defend against an action brought against the party seeking declaratory relief"). However, the appropriate forum for determining an abuse of discretion was an appeal from the purportedly incorrect decision granting declaratory relief in St. Francois County, not the current collateral action.

■ Whether these principles also operate to deprive the circuit court of jurisdiction is another matter.

The absence of a justiciable controversy is said in some of our cases to deprive the court of "jurisdiction" to enter a declaratory judgment. It is perhaps more nearly correct to say that a petition for declaratory judgment is addressed to the court's discretion, and that it is an abuse of discretion to undertake to issue a declaratory judgment without a justiciable controversy to act upon.

*Fulson v. Kansas City Star Co.*, 816 S.W.2d 297, 300 (Mo.App. W.D.1991) (internal citations omitted).

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (overruled on other grounds), has been described by our Supreme Court in *Missouri Soybean Ass'n*, 102 S.W.3d at 26, as the "seminal case in the modern era of ripeness law." There the United States Supreme Court clarified that "declaratory judgment remedies are discretionary[.]" *Abbott Labs.*, 387 U.S. at 148, 87 S.Ct. 1507.

■■■ Reid attacks the St. Francois County declaratory judgment action as void on the grounds that the circuit court lacked subject matter jurisdiction. Reid presents a colorable argument that the St. Francois County court abused its discretion in issuing declaratory relief for the State; however, Reid produces no argument that convinces us that the court lacked subject matter jurisdiction. An abuse of discretion in the issuance of a declaratory judgment does not result in a lack of subject matter jurisdiction; it does not create a void judgment.

Had Reid timely appealed the St. Francois County circuit court ruling, the Missouri Court of Appeals for the Eastern District could have reviewed the record for abuse of discretion. However, because Reid did not appeal, the question before us is whether the circuit court was deprived of jurisdiction by the available adequate remedy, intervention in the federal suit, and lack of ripeness resulting in a void judgment. We find that Reid's complaints regarding ripeness and adequate alternative legal remedy do not amount to jurisdictional defects and, thus, are not issues which can be collaterally attacked.

The judgment of the Cole County circuit court denying Reid's petition for declaratory judgment on the grounds of res judicata is affirmed.

BRECKENRIDGE, P.J., concurs.

HOLLIGER, J., concurs in separate opinion.

HOLLIGER, J., concurring.

I concur fully with the majority opinion because of the doctrine of res judicata. I write separately to emphasize that Margo Reid has lost her opportunity to collect from the Missouri State Legal Expense Fund because of her failure to appeal from the decision of the St. Francois County holding that the Fund had no duty to defend or indemnify for the wrongful actions of a state employee against a mental health patient. With regard to the obligation to indemnify, that issue was both premature and was not proper for declaratory judgment. The judgment of St. Francois County was incorrect and would, I believe, have been reversed on appeal. At this point the Cole County Circuit and this court are bound, however, by that final judgment.